**David KAUFMAN, et al., Plaintiffs,**

v.

**Thomas H. MAGID, et al., Defendants.**

**Civ. A. No. 81–142–T.**

United States District Court,
D. Massachusetts.

May 19, 1982.

OPINION

TAURO, District Judge.

This action seeks the recovery of damages allegedly arising from mismanagement of and misrepresentations about securities investments made by the plaintiffs, David and Joan Kaufman. Named as defendants are: Merrill, Lynch, Pierce, Fenner and Smith, Inc. ("Merrill Lynch"); Thomas H. Magid ("Magid"), an agent of Merrill Lynch; William Hall ("Hall"), a Merrill Lynch account executive and vice president of the Jenkintown, Pennsylvania regional office of Merrill Lynch; and Arthur Toll ("Toll"), who allegedly acted as an investment advisor to the plaintiffs. Plaintiffs allege violations by the defendants of a number of federal and state law regulating securities investments.[1] All four defendants have moved to dismiss the complaint for failure to comply with Rules 8 and 9(b) of the Federal Rules of Civil Procedure[2] and for failure to state a claim for which relief may be granted.[3]

I

According to the allegations in the complaint, the following series of events transpired. Sometime before January 17, 1979, defendant Toll, representing that he was competent to do so, offered investment advisement services to the plaintiffs. Relying on these representations, the plaintiffs executed a power of attorney on July 17, 1979, authorizing Toll to deal for them in securities options. The power of attorney provided that Toll would receive twenty-five percent of the resulting profits.

Toll referred the plaintiffs to defendant Magid, a Merrill Lynch account executive, for the purpose of inducing them to open an account at defendant Merrill Lynch's Jenkintown, Pennsylvania branch office. In

Camille F. Sarrouf, John B. Flemming, Sarrouf, Murray & Daly, Boston, Mass., for plaintiffs.

John L. Keefe, King, Kellogg & Gardner, Wellesley, Mass., Daniel T. Cronk, Richard N. Weiner, W. Jeffery Garson, Rawle & Henderson, Philadelphia, Pa.; for Toll.

William F. Weld, Hill & Barlow, Boston, Mass., and E. Michael Bradley, Brown, Wood, Ivey, Mitchell & Petty, New York City, for Magid, Hall, and Merrill, Lynch.

1. Violations are alleged under the Securities Act of 1933, 15 U.S.C. Secs. 77a *et seq.*; The Securities Exchange Act of 1934, 15 U.S.C. Secs. 78a *et seq.*; the Investment Advisors Act, 15 U.S.C. Sec. 80b–1 et seq.; Rules of the Chicago Board of Options Exchange and New York Stock Exchange; the Massachusetts Blue

Sky Law, Mass.Gen.Laws Ch. 110A; and common law theories of deceit, negligence, and intentional and negligent misrepresentation.

2. Fed.R.Civ.P. 8, 9(b).

3. *See* Fed.R.Civ.P. 12(b)(6).

February 1979, relying on the representations made by Toll and Magid, plaintiff David Kaufman opened an account at the Merrill Lynch office in Jenkintown, and executed a power of attorney authorizing Toll to place stock option orders in his (Kaufman's) name. Kaufman then transferred assets allegedly worth $475,000 into that Merrill Lynch account.

Plaintiff Joan Kaufman, allegedly relying on what Toll and Magid had told her, similarly opened an account and executed a power of attorney. She transferred assets worth approximately $125,000 into the account. Defendant Hall, employed by Merrill Lynch as a Registered Options Principal and vice-president of the Jenkintown branch office, "approved and authorized" options trading in the accounts of both plaintiffs.

During May 1979, the plaintiffs, allegedly relying on representations made by Toll and Magid, opened joint accounts at the same Merrill Lynch office. They executed a power of attorney authorizing defendant Toll to place orders for stock options transactions in their names. Defendant Hall approved and authorized options trading in the joint account.

Plaintiff David Kaufman allegedly made "numerous and repeated inquiries" of Magid regarding the status of the accounts. He was "repeatedly assured" that they were "satisfactory," that Toll was an "expert in securities options transactions," and that Magid was "closely monitoring the activity" in the accounts. Complaint, p. 4. In addition, Toll allegedly made "numerous misstatements and misrepresentations" to David Kaufman about the results of the transactions he had completed for the plaintiffs' accounts. *Id.*

Between January 1979 and March 1980, defendants Toll and Magid allegedly effected in excess of one hundred stock options transactions in the accounts, at a total cost of approximately $3,788,000. These transactions generated in excess of $80,000 in commissions and $37,000 in marginal interest "for defendants' benefit." Complaint, p. 4. As a result, the plaintiffs allegedly lost approximately $510,000 in their accounts. In February 1980, defendant Magid for the first time informed the plaintiffs that their accounts had suffered severe losses.

## II

### *Defendants' Motions Under Rule 8 and 9(b)*

■ Defendants have moved to dismiss the complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a) requires that pleadings be "short" and "plain", and Rule 8(e) requires each averment to be "simple, concise and direct." In applying Rule 8 on a motion to dismiss, the court must take account of the "nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters." *City of Gainesville v. Florida Power and Light Company*, 488 F.Supp. 1258, 1263 (S.D.Fla.1980) (quoting C. Wright and A. Miller, 5 *Federal Practice and Procedure*, sec. 1217 at 127).

■ The plaintiffs in this action are alleging the violation of numerous provisions in the federal securities laws, which are complex in their application. This makes "concise" pleading difficult. Further, the plaintiffs are alleging violations by four different defendants, each performing functions distinct in some measure from the rest. The allegations are asserted in an organized if not concise fashion. Each count asserts a separate violation by a single defendant. What verbosity and repetition appears in the complaint does not, standing alone, justify dismissal under Rule 8.

■ The defendants also challenge the pleadings on the grounds that the plaintiffs have failed to plead fraud with sufficient detail and specificity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A chief purpose of Rule 9(b)

is to ensure that pleadings give defendants fair notice of the plaintiffs' claims and grounds therefore, so that they can frame their answers and defenses. *See, e.g., Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd without opinion*, 636 F.2d 1201 (2nd Cir. 1980); *Lerman v. ITB Management Corporation*, 58 F.R.D. 153, 155–56 (D.Mass.1973) (*"Lerman"*). Where the defendant is sufficiently informed of the misconduct of which he is charged, dismissal on grounds of technical non-compliance is inappropriate. *See, e.g., In Re Commonwealth Oil/Tesora Petroleum Corporation Securities Litigation*, 467 F.Supp. 227, 251 (W.D.Tex.1979). The Federal Rules of Civil Procedure provide a safeguard to defendants in Rule 12(e), which permits a party to move for a more definite statement.

■ The complaint here alleges fraudulent non-disclosure and non-investigation, as well as fraudulent misrepresentation. The complaint, significantly, does identify the particular defendants who dealt with the plaintiffs, and the general time period involved. But the allegations are general, referring only to continuous assurances given the plaintiffs that their investments were under proper supervision. The complaint does not specify the times, places or details of the alleged misrepresentations.

In reviewing the complaint, the court finds that the allegations of fraudulent non-disclosure and non-investigation are sufficient to satisfy the requirements of Rule 9(b). These contentions, if true, allege continuing failures to act concerning which pleading detail as to time, place and manner is difficult, if not impossible. The court finds that the allegations of misrepresentation by the defendants are insufficiently detailed to provide the defendants a reasonable opportunity to frame meaningful responses. *See, e.g., Palace v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, CA 80–1831–T (D.Mass. Aug. 3, 1981).

Accordingly, the defendants' motions to dismiss are hereby allowed, subject to the plaintiffs filing a properly amended complaint within thirty days, with respect to the following: Count I, par. 24; Count II, par. 29; Count VIII, par. 52; Count IX (all); and, only insofar as each alleges misrepresentations by defendant Toll, Counts XII and XIII.[4]

III

*1934 Securities Exchange Act, Section 10(b) and Rule 10b–5:*

■ The complaint alleges primary violations of Section 10(b), 15 U.S.C. Sec. 78j(b), and S.E.C. Rule 10b–5, 17 C.F.R. Sec. 240.-10(b)–5, by defendants Toll (Count XII), Magid (Count II) and Hall (Count XVII). The substance of the allegations is as follows:

*Toll—*
—procured power of attorney without disclosing inherent risks of options trading
—non-disclosure of transactions Toll consummated in plaintiffs' behalf
—misrepresentation and non-disclosure of results of transactions
—fraudulent investment scheme to maximize own profits

*Hall—*
—non-investigation of plaintiffs' financial background and investment objectives
—negligent failure to supervise options trading
—non-disclosure of substantial losses
—aiding and abetting Toll's fraudulent scheme

*Magid—*
—non-disclosure of material facts in options trading
—misrepresentation of nature and effects of certain transactions
—reassuring plaintiffs of Toll's competence and qualifications in the options field

---

**4.** The court addresses further the applicability of Rule 9(b) to the plaintiffs' complaint in its consideration of the allegations of Section 10(b) and Rule 10b–5 violations, *infra*. Meanwhile, the court finds it unnecessary, in view of discussions, *infra*, to address the issue of Rule 9(b)'s possible applicability to Counts III and IV.

—non-disclosure of substantial losses

—aiding and abetting Toll's fraudulent scheme *separately alleged as Rule 10b–5 violations* :

—inadequate inquiry into plaintiffs' financial status and investment objectives

—"churning"

The defendants assert, as a fatal deficiency in the Section 10(b) and Rule 10b–5 allegations, the plaintiffs' failure to allege "scienter." The Supreme Court has not defined the term precisely, other than to hold that mere negligence is not sufficient. *See Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1975).

Lower courts have found recklessness sufficient. In *Stewart v. Bennett*, 362 F.Supp. 605, 607–08 (D.Mass.1973) ("*Stewart II*") (supplementing *Stewart v. Bennett*, 359 F.Supp. 878 (D.Mass.1973) ("*Stewart I*")) (*pre-Hochfelder*), this court construed recklessness as satisfying the "knowing or intentional" requirement for Rule 10b–5 "scienter". Although the First Circuit has not addressed the issue,[5] a majority of courts have adopted the "recklessness" standard. *See, e.g., Rolf v. Blyth, Eastman, Dillon and Company*, 570 F.2d 38 (2nd Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

In assessing the claims asserted under section 10(b) and Rule 10b–5, the court must take into account the Supreme Court's holding that the mere failure to disclose the unfairness of a particular transaction or some breach of fiduciary duty is insufficient for liability under Rule 10b–5 absent some affirmative showing of manipulation, deception, misrepresentation, or non-disclosure of material facts. *See Sante Fe Industries, Inc. v. Green*, 430 U.S. 462, 473–74, 97 S.Ct. 1292, 1300–01, 51 L.Ed.2d 480 (1977) (involving alleged misconduct in initiating a short-form merger).

Here, the plaintiffs allege that each of three defendants failed to disclose the substantial losses incurred in options trading over the period of almost one year. In addition, the plaintiffs allege that defendant Toll failed to disclose the transactions themselves, and that defendant Magid reassured the plaintiffs of Toll's qualifications and competence in the options trading field. These allegations of non-disclosure and misrepresentation, if true, may suffice to bring Toll and Magid within the statutory proscriptions against misrepresentation and non-disclosure of material facts. Inasmuch as the trading allegedly occurred continuously and actively over a long period of time, the defendants must be presumed, for purposes of the dismissal motions, to have actually known about, or to have had reasonable notice of, the occurrence of severe losses. Considering the magnitude of the plaintiffs' alleged losses, all three defendants may be viewed as having acted in an allegedly reckless manner. Assessing these allegations against the "recklessness" standard, this court finds that they are sufficient to state claims under Section 10(b) and Rule 10b–5.[6] *See Stewart II, supra*, at 607–08.

---

**5.** In *Hoffman v. Estabrook and Company, Inc.*, 587 F.2d 509, 516 (1st Cir. 1978), the First Circuit assumed, but did not decide, that "recklessness" is sufficient. *See First Commodity Corporation of Boston v. Commodity Futures Trading Association*, 676 F.2d 1, 6–7 (1st Cir. 1982).

**6.** At the hearing, the defendants asserted as an additional ground for dismissal of these counts the fact that the alleged misconduct was not "in connection with the purchase or sale" of any security. The defendants drew the court's attention to *O'Brien v. Continental Illinois National Bank and Trust Company*, 593 F.2d 54 (7th Cir. 1979), where the court in dismissing Rule 10b–5 claims found that the alleged misconduct did not directly affect any actual "purchase or sale" of securities by the plaintiffs. *Id.* at 58–63 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)).

In *O'Brien*, however, the plaintiffs' *only* means of control over the defendant's trading activity was their power to terminate entirely the trust and agency agreements that empowered the defendant to trade in the plaintiffs' behalf. Those agreements, as construed by the court, "made the decision [to purchase and sell securities] *solely* [the defendant's] and the plaintiffs had no voice in it." *Id.* at 60 (emphasis added).

Sufficiency of the Section 10(b) and Rule 10b–5 allegations under the "recklessness" standard for "scienter" precludes the court's dismissal *in toto* of Counts I, II, XII and XVII against defendants Magid, Toll and Hall, respectively. These counts include particular allegations, however, that merit further consideration by the court.

### A. "Churning" by Magid:

■ The complaint states in general fashion that "Magid ... violated the provisions of Rule 10b–5 by churning the plaintiffs' accounts for the purpose of generating commissions on the transactions rather than serving the best interests of plaintiffs' investment objectives." Complaint, p. 5. Defendants challenge the "churning" allegation on the grounds that the plaintiffs failed to plead the two elements necessary for "churning" that this court articulated in *Kravitz v. Pressman, Frolich and Frost, Inc.*, 447 F.Supp. 203, 211 (D.Mass.1978) ("*Kravitz*"). In *Kravitz*, this court held that liability for "churning" requires demonstration of (1) control over plaintiffs' account(s), and (2) excessive trading. *Id. See also Petrites v. J. C. Bradford and Company*, 646 F.2d 1033, 1035 (5th Cir. 1981) (citing *Kravitz* ).

Defendants' objection must fail for several reasons. First, allegations throughout the complaint suggest that Magid exercised the requisite control over the plaintiffs' accounts. There is no evidence from which the court can conclude that the plaintiffs had sufficient business and investment experience to supervise the trading competently, or that they exercised any meaningful control over the specific transactions. *See, e.g., Kravitz, supra*, at 211.

Second, the plaintiffs have alleged a turnover rate sufficient to constitute possible excessive trading. More than one hundred stock option transactions for their accounts allegedly occurred within one year,

for a total dollar amount of $3,788,000— more than six times the value of the original $600,000 investment. *See, e.g., Mihara v. Dean Witter and Company*, 619 F.2d 814, 821 (9th Cir. 1980) ("While there is no clear line of demarcation, courts and commentators have suggested that an annual turnover rate of six reflects excessive trading.") (citing authority).

Third, the plaintiffs have alleged that the transactions were motivated by the defendants' desires to generate commissions. If proved, such disregard for the plaintiffs' interests would clearly satisfy the "recklessness" standard for "scienter" that the court finds applicable for ascertaining sufficiency of the allegations of Section 10(b) and Rule 10b–5 violations in the complaint. *See, e.g., Id.; Rolf v. Blyth, Eastman, Dillon and Company*, 424 F.Supp. 1021, 1039–40 (S.D. N.Y.1977), *aff'd*, 570 F.2d 38 (2nd Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

Finally, the plaintiffs' allegations of "churning," although pleaded generally and without specific detail, track the language that courts have used to succinctly describe it. *See, e.g., Petrites v. J. C. Bradford and Company, supra*, at 1035 ("[c]hurning occurs when a securities broker enters into transactions and manages a client's account for the purpose of generating commissions and in disregard of his client's interests") (quoting *Miley v. Oppenheimer and Company*, 637 F.2d 318, 324 (5th Cir. 1981)).

For these reasons, the defendants' motions to dismiss the particular allegations of "churning" in the Section 10(b) and Rule 10b–5 Counts of the complaint are denied.

### B. Fraudulent Investment "Scheme":

■ The complaint alleges that defendant Toll implemented a fraudulent investment "scheme," and that defendants Hall and Magid aided and abetted such scheme,

---

Here, despite the practical difficulties the plaintiffs may have faced in monitoring effectively the defendants' trading, there is no indication that the plaintiffs entirely lacked the authority to affect specific transactions. Accordingly, the court views *O'Brien* as distin-

guishable on its facts from the present case. For purposes of the motions to dismiss, the court finds that the "purchases and sales" at issue here were not too remote to satisfy the "in connection with" standing requirement for stating a claim under Rule 10b–5.

all in violation of Section 10(b) and Rule 10b–5. These allegations of fraud are subject to Rule 9's requirement of pleading with particularity. The allegations suggesting "reckless" conduct that support the validity of other Section 10(b) and Rule 10b–5 violations alleged in the complaint do not suffice to support the claims of a fraudulent investment "scheme" on Toll's part, and the aiding and abetting of such scheme by Hall and Magid. To assert these claims properly, the plaintiffs must plead more detail regarding the time, place and manner of the allegedly fraudulent actions constituting the "scheme". *See, e.g., Lerman, supra,* at 155–56.

Accordingly, those parts of the Section 10(b) and Rule 10b–5 counts that allege a fraudulent scheme by defendant Toll (Count XII, par. 70), and the aiding and abetting of such scheme by defendants Magid and Hall (Count I, par. 25; Count II, par. 31; Count XVII, par. 91), are hereby dismissed with leave to amend within thirty days.

*Section 12(2) of the 1933 Securities Act:*

The plaintiffs allege violations of Section 12 of the 1933 Securities Act, 15 U.S.C. Sec. 77*l*, by Magid (Count III) and Toll (Count XIII). Responding to the defendants' contention that they never "sold" any securities to the plaintiffs, as required for liability under Section 12(2), plaintiffs allege that the customer contracts themselves were investment contracts that constituted "securities" within the meaning of the Securities Acts.

The Supreme Court has stated that an "investment contract" is a "security" when it involves the investment of money in a common enterprise, with profits to be derived "solely" from the efforts of others. *Securities Exchange Commission v. W. J. Howey Company,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946). *See, e.g., Swank Federal Credit Union v. C. H. Wagner and Company,* 405 F.Supp. 385, 388–89 (D.Mass.1975). There is no question here that the plaintiffs invested money, but it is less clear whether the arrangements constituted a "common enterprise," with profits to be derived solely from the defendants' efforts.

■ The defendants argue that, in transactions effecting the plaintiffs' account, Merrill Lynch and Magid acted on instructions from Toll, whom the plaintiffs allegedly had appointed as their agent under a power of attorney. Asserting that they acted solely as the plaintiffs' agents, they contend that liability cannot attach under Section 12(2).

Courts have declined to recognize Section 12(2) claims where transactions in issue were executed pursuant to an agency relationship. *See, e.g., Rindner v. Stockcross, Inc.,* [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) par. 97, 885 at 90, 479 (D.Mass.1981). Whether agency relationships in fact existed here is not entirely clear. In this context, some cases have suggested that an agency relationship may exist even where an investor grants complete control over specific trades in accounts, retaining authority only to terminate the relationship entirely. *See, e.g., O'Brien v. Continental Illinois National Bank and Trust Company,* 593 F.2d 54, 60 (7th Cir. 1979).

Here it is not clear that plaintiffs had retained meaningful control over the specific, ongoing transactions. For that reason, defendants' motion to dismiss the Section 12(2) claims on the theory of agency will not lie. *Compare Kravitz, supra,* at 206–11 (upholding claims under Rule 10b–5).

■ But even assuming for purposes of assessing the Section 12(2) claims that the plaintiffs did not retain any meaningful control over the accounts, and that the profits were to be derived solely from the defendants' efforts, it remains unclear whether the investments themselves constituted a "common enterprise." Courts have split on what constitutes "commonality." Most require "horizontal commonality," the pooling of the investor's funds with those of other investors. *See, e.g., Curran v. Merrill, Lynch, Pierce, Fenner and Smith, Inc.,* 622 F.2d 216, 222–25 (6th Cir. 1980), *aff'd* (on unrelated issue), 453 U.S. 925, 102 S.Ct. 884, 69 L.Ed.2d 1020 (1982); *Hirk v. Agri-Re-*

search Council, Inc., 561 F.2d 96 (7th Cir. 1977); *Wasnowic v. Chicago Board of Trade,* 352 F.Supp. 1066, 1068–69 (M.D.Pa. 1972), *aff'd without opinion,* 491 F.2d 752 (3rd Cir. 1973), *cert. denied,* 416 U.S. 994, 94 S.Ct. 2407, 40 L.Ed.2d 773 (1974). There is no allegation that such pooling occurred here. Others, however, have required only "vertical commonality," such as an interdependence between the fortunes of the investor and the profits of the broker. *See, e.g., Securities and Exchange Commission v. Continental Commodities Corporation,* 497 F.2d 516, 521–22 (5th Cir. 1974); *Miller v. Central Chinchilla Group, Inc.,* 494 F.2d 414, 416–17 (8th Cir. 1974); *Securities and Exchange Commission v. Glen W. Turner Enterprises,* 474 F.2d 476, 482 n.7 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). The First Circuit has not addressed the issue.

Even under the "vertical commonality" approach, however, the plaintiffs' complaint does not adequately allege that the fortunes of the plaintiffs and defendant Magid were "interdependent." This court adopts the view that a commission arrangement alone is not enough. *See, e.g. Brodt v. Bache and Company,* 595 F.2d 459, 461–62 (9th Cir. 1979). Because there is no other basis here for recognizing commonality between the plaintiffs and Magid, the Section 12(2) claims against Magid (Count III) are hereby dismissed.

With respect to defendant Toll, the complaint alleges that the plaintiffs entered "into a fee arrangement . . . whereby defendant's compensation would be a percentage of the profits made. . . ." Complaint,

par. 66. The plaintiffs asserted at the hearing and in the complaint itself that the agreed percentage was twenty-five. Courts have held that a percentage-of-profits arrangement is sufficient to reflect interdependence indicative of "vertical commonality." *See, e.g., Savino v. E. F. Hutton and Company,* 507 F.Supp. 1225 at 1239, 1243 [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) par. 97,850 at 90,242, 90,253 (S.D.N.Y.1981). Section 12(2) liability, further, has been recognized where a broker, though an agent for the buyer, was also at the same time an agent for the seller. *See Cady v. Murphy,* 113 F.2d 988, 990–91 (1st Cir.), *cert. denied,* 311 U.S. 705, 61 S.Ct. 175, 85 L.Ed. 458 (1940).

 Thus, the allegations in the complaint are sufficient to sustain the Section 12(2) claim against Toll.[7] Defendant Toll's motion to dismiss the Section 12(2) claim (Count XIII), accordingly, is denied.

*Section 17(a) of the 1933 Securities Act:*

 The complaint alleges violations of Section 17(a) of the 1933 Securities Act, 15 U.S.C. Sec. 77q, arising from non-investigation, non-disclosure, misrepresentation and an investment "scheme" by defendant Toll (Count XIV), and the "aiding and abetting" of Toll's investment "scheme" by defendant Magid (Count IV). Courts are split on whether Section 17(a) provides an implied private right of action for damages. Neither the Supreme Court nor the First Circuit has addressed the issue. District courts in this Circuit, however, have adopted the view that Section 17(a) does not provide a

---

7. Defendants also object to the Section 12(2) counts on grounds that the plaintiffs failed to plead affirmatively that they complied with the applicable one year statute of limitations contained in Section 13 of the 1933 Act ("Section 13"). Section 13, however, requires that the action under Section 12(2) be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence. . . ."

Paragraph 21 of the complaint alleges that the plaintiffs were first informed of the facts concerning severe losses to their accounts in February 1980. Each count of the complaint

expressly incorporates paragraph 21 by reference. For purposes of the pending motions, the court construes February 1980 as the time when plaintiffs "discovered" the alleged omissions that are the basis for their claims under Section 12(2). The court, further, finds it inappropriate to assume that discovery "should have been made by the exercise of reasonable diligence" earlier. The complaint was filed on January 20, 1981, less than a year after the defendants' alleged disclosures. Thus, the court finds the objections to the Section 12(2) claims on statute of limitations grounds to be without merit.

private right of action for damages. *See, e.g. Dyer v. Eastern Trust and Banking Company*, 336 F.Supp. 890, 903, 910–11 (D.Me.1971); *Manchester Bank v. Connecticut Bank and Trust Company*, 497 F.Supp. 1304, 1313–14 (D.N.H.1980) (citing *Dyer*). *See also Rindner v. Stockcross, Inc.*, [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) par. 97,885 at 90,479, 90,481 (D.Mass.1981) ("[I]t is unlikely that Congress intended such a private right of action to exist") (citing *Dyer*).

The court finds no reason to depart from the reasoning that these courts have espoused in declining to imply a private right of action under Section 17(a). This position, moreover, accords with Supreme Court decisions adopting a restrictive approach concerning judicial implication of private remedies under the federal securities laws in general. *See, e.g., Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Universities Research Association v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); *Trans-America Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross and Company v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (discussed *infra*).[8] Accordingly, Counts IV and XIV of the complaint, alleging Section 17(a) violations by defendants Magid and Toll, are hereby dismissed.

*Investment Advisors Act* :

Count XI of the complaint alleges a violation by defendant Toll for his failure to register as an investment advisor, pursuant to 15 U.S.C. sections 80b–3(a), 80b–5(1) and 80b–6 (1970), and S.E.C. Rule 206(4)–2 (17 C.F.R. 275.206(4)-2). Defendant Toll's arguments for dismissing Count XI rely in large measure on his filed affidavit. Accordingly, the court shall give the plaintiffs the opportunity to respond with counter-affidavits, then treat Toll's motion to dismiss under Fed.R.Civ.P. 12(b)(6) as a motion for summary judgment under Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b).

*Securities Exchange Rules* :

The complaint alleges the violation of various stock exchange rules[9] by defendants Magid (Counts V and VI), Hall (Count XVIII) and Merrill Lynch (Count XXI). The defendants have moved to dismiss these counts on the grounds that there are no implied private rights of action for damages from these alleged violations.

The Supreme Court has emphasized clear limitations on the judicial inference of private rights of action for alleged violations of federal securities laws and regulations promulgated thereunder. *See, e.g., Trans-america Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 23–25, 100 S.Ct. 242, 249–50, 62 L.Ed.2d 146 (1979); *Touche Ross and Company v. Redington*, 442 U.S. 560, 568–79, 99 S.Ct. 2479, 2485–90, 61 L.Ed.2d 82 (1979). Applying these decisions, courts have denied the existence of private rights of action for damages for alleged violations of stock exchange rules. *See, e.g., Jablon v. Dean Witter and Company*, 614 F.2d 677, 679–81 (9th Cir. 1980); *Klitzman v. Bache, Halsey, Stuart, Shields, Inc.*, 499 F.Supp. 255, 258–59 (S.D.N.Y.1980) (citing *Jablon*); *Greene v. Loeb Partners*, 532 F.Supp. 747, 748–49 [current] Fed.Sec.L.Rep. (CCH) par. 98,463 at 92.710–12 (S.D.Fla.1982); *Liskey v. Oppenheimer and Company*, [current] Fed.Sec.L.Rep. (CCH) par. 98,419 at 92,507

---

**8.** The Supreme Court's "strict approach," requiring judicial scrutiny of legislative intent, remains the applicable standard for inferring private remedies, notwithstanding the Court's recent holding that implied remedies exist under the Commodities Exchange Act, 7 U.S.C. Secs. 1 *et seq.* (CEA). *See Merrill, Lynch, Pierce, Fenner and Smith, Inc. v. Curran*, —— U.S. ——, ——–——, 102 S.Ct. 1825, 1839–

48, 71 L.Ed.2d 182 (1982) (finding private remedies under CEA upon review of "contemporary legal context" that surrounded Congress's enactment of amending legislation).

**9.** Violations are alleged under Rules 9.7, 9.8 and 9.15 of the Chicago Board of Options Exchange, and New York Stock Exchange Rule 405.

(N.D.Okl.1982); *Hoover v. E. F. Hutton and Company* [1980 Transfer Binder] Fed.Sec.L. Rep. (CCH) par. 97,654 at 98,484–86 (E.D. Pa.1980). There is no contrary case law in this Circuit.

In view of the foregoing, and absent any demonstration of legislative intent to create private damage remedies for the alleged violations of exchange rules cited in the plaintiffs' complaint, the court declines to recognize implied rights of action for damages for the exchange rule violations alleged in Counts V, VI, XVIII and XXI. Accordingly, these counts are dismissed.

*Massachusetts Blue Sky Law :*

 Counts VII and XXIV of the complaint allege violations of the Massachusetts Blue Sky Law, Mass.Gen.Laws ch. 110A ("Chapter 110A"). All defendants except Toll have moved to dismiss these counts on two grounds. First, they argue that the complaint fails to refer to section 410(a) of Chapter 110A, which provides express authorization for a private right of action under the statute. This objection alone would justify allowing dismissal, but with leave to amend. Second, however, they contend that the plaintiffs have failed to allege that any of the defendants transacted business as a broker in Massachusetts. Indeed, both Counts lack allegations that the execution of customer agreements ever occurred in Massachusetts, or that the disputed stock transactions took place in Massachusetts. Finding that the allegations in Count VII and Count XXIV (alleging secondary liability of Merrill Lynch under Chapter 110A) fail to state a claim, the court hereby dismisses Counts VII and XXIV.

 Count XV of the complaint alleges a separate claim against defendant Toll under Chapter 110A, section 102. Toll responds that Chapter 110A provides no private right of action for damages for advisory activities proscribed by section 102. The court agrees. Count XV, accordingly, is hereby dismissed.

*Common Law/Negligence Claims :*

The complaint alleges various common law violations by defendants Magid (Counts IX and X), Toll (Count XVI) and Merrill Lynch (Counts XXII and XXIII). These state law claims are based on the same factual allegations as the claims asserted under the federal securities laws. Inasmuch as the court is denying dismissal of certain federal claims, there is no compelling reason for the court in its discretion to dismiss the pendent state claims at this time. *See, e.g., Klitzman v. Bache, Halsey, Stuart, Shields, Inc., supra,* at 258. *See generally United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). Accordingly, the defendants' motions to dismiss Counts X, XVI, XXII and XXIII are denied.[10]

*Secondary Liability Claims :*

The complaint alleges that defendant Merrill Lynch is secondarily liable as a "controlling person" of defendant Magid. Violations for negligent supervision of Magid's activities as account executive for the plaintiffs' accounts are alleged under Section 15 of the 1933 Securities Act, 15 U.S.C. Sec. 77o (Count XX) and Section 20 of the 1934 Securities Exchange Act, 15 U.S.C. Sec. 78t (Count XIX). Merrill Lynch seeks dismissal of these counts on the grounds that the allegations of primary violations must be dismissed. Because the court is not dismissing all of the allegations of primary violations, however, dismissal of Counts XIX and XX is hereby denied.

### III

In view of the foregoing, the court hereby allows in part the four defendants' motions to dismiss the complaint, as follows: Counts III–VII, XIV–XV, XVIII, XXI and XXIV are dismissed. Count I (pars. 24 and 25), Count II (pars. 29 and 31), Count VIII (par. 52), Count IX (all), Count XVII (par. 91) and, insofar as each alleges fraudulent misrepresentation by defendant Toll,

---

**10.** The court's aforementioned dismissal, with leave to amend, of Count IX is based solely on the failure of the allegations therein to comply with Fed.R.Civ.P. 9(b).

Counts XII and XIII, are dismissed with leave to amend within thirty days. The motions to dismiss Count XI shall be considered as motions for summary judgment, after the plaintiffs have had the opportunity to submit counter-affidavits within thirty days.

In all other respects, the four defendants' motions to dismiss are denied.

An order will issue.