**John F. XAPHES, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., Tucker Anthony & R.L. Day, Inc. and Mark B. Billings, Defendants.**

**Civ. No. 80–0132–P.**

United States District Court,
D. Maine.

Oct. 29, 1984.

See also, D.C., 102 F.R.D. 545; D.C., 102 F.R.D. 962.

John J. O'Leary, John S. Upton, Jeffrey D. Curtis, Kevin Gordon, Portland, Me., for plaintiff.

Thomas H. Allen, Richard A. Carriuolo, Drummond, Woodsum, Plimpton & Mac-Mahon, Portland, Me., for Merrill Lynch, Pierce.

P. Benjamin Zuckerman, Charles Kadish, Verrill & Dana, Portland, Me., James E. McGuire, Warren D. Hutchinson, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for Tucker, Anthony & R.L. Day, Inc.

Thomas Schulten, Priscilla F. Gray, Thomas Wheatley, Perkins, Thompson, Hinckley & Keddy, Portland, Me., for Mark B. Billings.

MEMORANDUM AND ORDER ON DE-FENDANTS' JOINT MOTION TO DISMISS MAINE BLUE SKY CLAIMS, 1933 ACT SALES CLAIMS, AND SECTION 17(a) CLAIMS

GENE CARTER, District Judge.

With this motion Defendants seek to dismiss (1) the Maine blue sky law claims asserted in Counts III, IV and XIV; (2) the claims brought under § 12(2) of the Securities Act of 1933 (15 U.S.C. § 77$l$(2)) set forth in Counts I and II insofar as they are based on sales by Plaintiff of options and other securities; and (3) the claims under § 17(a) of the 1933 Act (15 U.S.C. § 77q(a)) asserted in Count XIII; and, in the alternative, the claims under the Maine blue sky law and § 17(a) of the 1933 Act insofar as they are based on sales by Plaintiff of options or other securities.

### A. The Blue Sky Claims

Defendants argue first that the Maine blue sky law, as it existed in the periods relevant to this action, 32 M.R.S.A. § 881 (1978), did not provide a cause of action by customers against their brokers. The actions of Defendants allegedly violating the blue sky law span the period from 1976–1980. During that time the blue sky law provided civil liability as follows:

1. Liabilities. Any person who

. . . . .

B. Offers or sells a security ... by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him. . . .

■ Defendants argue that any person who "[o]ffers or sells" did not encompass brokers.[1] In support of their argument they point to the subsection of § 881 added by the 1981 amendment, which provides:

---

**1.** As Defendants explain, and Plaintiff apparently concedes, the statute in effect at the time of the alleged violations governs this action. Although the 1981 amendment specifically includes dealers, that provision should not be applied retroactively since it affects substantive rights and there is no expressed intent of the legislature to have it so apply. See Michaud v. Northern Maine Medical Center, 436 A.2d 398 (Me.1981); Opinion of the Justices, 370 A.2d 654, 668 (Me.1977).

Every person who directly or indirectly controls the seller liable under paragraph A or B, every partner, officer or director of the seller, every person occupying a similar status or performing similar functions, every employee of the seller who materially aids in the sale, and every dealer or agent who materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

 Defendants contend that the specific addition of a section detailing liability for persons who had not been specifically named before is evidence that such liability was not previously available. The Court agrees with this analysis. Contrary to Plaintiff's assertion that the new section merely added a defense, the statement of fact accompanying Pub.L.1981, ch. 448, § 24, which is codified as the 1981 amendment to § 881, explicitly states that

The law regarding civil liabilities would be amended *to broaden the section* by spelling out that persons controlling the issuer or seller may also be liable. This is essentially Uniform Securities Act language.

L.D. 841, Statement of Fact, § 24 (110th Legis.1981) (emphasis added). Because the amendment represents a specific broadening of the previous section, it is fair to assume too that no such liability for dealers previously existed.

This conclusion is bolstered by the language of the amendment itself. That language demonstrates that previous liability had extended to sellers: "Every person who directly or indirectly controls the *seller* liable under paragraph A or B." While

Plaintiff invites the Court to use the statutory definitions to squeeze brokers into the category of sellers, the amendment makes clear that such liability was not previously intended. After its listing of persons now liable, including "a dealer or agent who materially aids in the sale," the statute refers to the enumerated persons as "the nonseller so liable." Since the statute refers to a dealer in this context as a nonseller, he cannot at the same time be "a seller liable under paragraph A or B."

Plaintiff argues that this Court's decision in *Murphy v. Cady,* 30 F.Supp. 466 (D.Me. 1939), *aff'd* 113 F.2d 988 (1st Cir.1940), demonstrates that brokers are subject to civil liability for violations of the blue sky law. In *Murphy,* the Court determined that language in Section 12(2) of the 1933 Securities Act, which is very similar to that of the pre-amendment blue sky law, set forth a cause of action against brokers. Although this Court would, of course, follow its determination in *Murphy* concerning liability in cases brought under Section 12(2) of the federal act, it cannot accept Plaintiff's assertion that construction of a federal act compels the same construction of a similar state statute. This is particularly so where the language of the statute and the legislative documents surrounding it suggest that the federal construction does not apply.

Since brokers were not subject to civil liability for violation of the Maine blue sky law before 1981, Plaintiff's allegations of dealer violations between 1976 and 1980 fail to state a claim for which relief can be granted under that statute. Therefore, the blue sky claims asserted in Counts III, IV, and XIV must be dismissed.[2]

**B.** *Claims Brought Under § 12(2) of the Securities Act of 1933*

Defendants contend that Plaintiff may not sue under Section 12(2) of the 1933 Act for fraud alleged in sales by him. They

---

**2.** Plaintiff has argued that Defendants failed to assert as an affirmative defense that dealers are exempted from liability under the statute and that they have, therefore, waived that defense. To call Defendants' response an affirmative defense is a mischaracterization, however. Defendants properly asserted in their answer that the complaint failed to state a claim upon which relief could be granted, and the Court has so found.

rely on *Dyer v. Eastern Trust & Banking Co.*, 336 F.Supp. 890, 910 (D.Me.1971), in which Judge Gignoux stated that "[o]nly purchasers have standing to sue for violations of Section 12(2) of the Securities Act." The instant complaint alleges both purchases and sales of securities. Plaintiff asserts instead that he purchased investment contracts from Defendants, which consisted of discretionary options trading accounts, by means of which, in turn, securities were both bought and sold. As purchaser of an investment contract, which is defined in 15 U.S.C. § 77b as a security, he contends that he may bring suit under § 12(2), which provides for liability for fraud for "any person who ... (2) offers or sells a security."

▪ In order to determine whether an options trading account is an investment contract, the parties agree that the Court must apply the three-part test first enunciated by the Supreme Court in *Securities and Exchange Commission v. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946) and determine "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."

▪ The parts of the test requiring that there be an investment of money and that the profits come solely from the efforts of others are clear-cut and in general require just an application of the facts of the particular case. The element requiring that there be a common enterprise has engendered considerable litigation and is the primary element of dispute in this case. Some courts have required that for a common enterprise to exist there must be horizontal commonality, or a pooling of the interests of investors. *See, e.g., Milnarik v. M–S Commodities, Inc.*, 457 F.2d 274 (7th Cir.1972); *Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 622 F.2d 216 (6th Cir.1980). There has been no allegation of such a pooling of interests in this case. Another line of cases requires verti-

cal commonality.[3] Relying on *Alvord v. Shearson Hayden Stone, Inc.*, 485 F.Supp. 848 (D.Conn.1980), Plaintiff contends that vertical commonality requires only that there be a one-to-one relationship between an investor and an investment manager. He states that such a relationship meets the requirement established by the majority of other courts, that vertical commonality is present when the "fortunes of the investor are interwoven with and dependent upon the efforts and success of those making the investment." *Holtzman v. Proctor, Cook & Co., Inc.*, 528 F.Supp. 9 (D.Mass.1981) (*quoting Securities and Exchange Commission v. Glenn Turner Enterprises, Inc.*, 474 F.2d 476, 482, n. 7 (9th Cir.1973); *see also Brodt v. Bache & Co., Inc.*, 595 F.2d 459, 461 (9th Cir.1978); *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225 (S.D.N.Y.1981). Although the First Circuit has not spoken on the issue, the District Court for Massachusetts has adopted a narrower view of vertical commonality, finding that the broader view urged by Plaintiff here "eliminates the common enterprise element from the *Howey* test." *Holtzman*, 528 F.Supp. at 16; *see also Kaufman v. Magid*, 539 F.Supp. 1088 (D.Mass.1982). This Court agrees with that assessment and with the conclusions of the Massachusetts court in those two cases that investment on a commission basis alone is not enough to establish vertical commonality. *See Brodt v. Bache & Co., Inc.*, 595 F.2d at 461. Plaintiff here has alleged that he paid commissions and interest on his accounts to Merrill Lynch and Tucker Anthony. He has not alleged anything else which demonstrates that his fortunes were in any way interwoven with those of his brokers. He cannot, therefore, establish vertical commonality. Since Plaintiff cannot meet the common enterprise requirement set forth in *Howey*, he has not shown that he bought an investment contract, or security, from Defendants as required by the statute. Therefore,

---

3. The First Circuit has not yet expressed its view on the proper test for a common enterprise under *Howey*. Since the Court finds that Plaintiff could meet neither, it is not necessary to decide the issue.

to the extent that Plaintiff's complaint alleges transactions that were sales by him rather than purchases, he has failed to state a claim against Defendants under Section 12(2) of the 1933 Act.

#### C. *The Claims Brought Under § 17(a) of the 1933 Act*

Finally, Defendants contend that the claims made in Count XIII under Section 17(a) of the 1933 Act should be dismissed because there is no private cause of action under that section. In 1971 this Court found that

> [t]he argument, based upon legislative history and statutory construction, is persuasive that Section 17(a) was intended only to afford a basis for injunctive relief and, if willfulness is present, for criminal liability, and was not intended to provide a civil remedy for damages supplementing that afforded by Section 12(2).

*Dyer v. Eastern Trust and Banking Co.,* 336 F.Supp. 890, 904 (D.Me.1971) (Gignoux, J.).[4] Since 1971 other district courts in the First Circuit have similarly found no private right of action under Section 17(a), *Kaufman v. Magid,* 539 F.Supp. 1088, 1097–98 (D.Mass.1982); *Manchester Bank v. Connecticut Bank & Trust Co.,* 497 F.Supp. 1304, 1314 (D.N.H.1980), but the First Circuit has expressly declined to decide the issue, noting the split among the circuits.

Although well aware of the conflicting views concerning this important question, the Court is unpersuaded that there is adequate reason to abandon Judge Gignoux's well-reasoned conclusion in *Dyer.* The rationale for that conclusion was recently reiterated approvingly by Professor Loss in his new treatise, *Fundamentals of Securities Regulation,* at 1148 (1983). The Court holds that the parts of Count XIII

alleging claims against Defendant under Section 17(a) must be dismissed.

Accordingly, it is ORDERED that:

(1) Defendants' joint motion to dismiss the blue sky law claims set forth in Counts III, IV and XIV be, and is hereby, GRANTED, and Counts III, IV, and XIV are hereby DISMISSED;

(2) Defendants' motion to dismiss those claims in Counts I and II, brought under Section 12(2) of the 1933 Act which pertain to sales by Plaintiff, be, and is hereby, GRANTED, and those claims are hereby DISMISSED; and

(3) Defendants' motion to dismiss those claims in Count XIII brought under Section 17(a) of the 1933 Act be, and is hereby, GRANTED, and those claims are hereby DISMISSED.

So ORDERED.

---

4. Plaintiff contends that the holding of *Dyer* is narrower and that Judge Gignoux held only that there was no private right of action under the circumstances of that case. Although the case is susceptible to that reading, the long and involved discussion of the possibility of a private right of action makes clear that the broader interpretation is correct. Moreover, the First Circuit has cited *Dyer* for the proposition that no private right of action exists. *Cleary v. Perfectune, Inc.,* 700 F.2d 774, 779 (1st Cir.1983).