**John F. XAPHES, Plaintiff,**

v.

**MERRILL, LYNCH, PIERCE, FENNER AND SMITH, INC., Tucker Anthony & R.L. Day, Inc. and Mark B. Billings, Defendants.**

**No. 80–0132 P.**

United States District Court,
D. Maine.

Jan. 10, 1985.

See also 597 F.Supp. 213.

John J. O'Leary, Kevin Gordon, Jeffrey D. Curtis, Portland, Me., for plaintiff.

Thomas H. Allen, Jay S. Blumenkopf, Portland, Me., James E. McGuire, Boston, Mass., Thomas Schulten, Thomas Wheatley, Charles Kadish, Portland, Me., for defendants.

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION IN LIMINE FOR A RULING ON OUTSTANDING LEGAL ISSUES

GENE CARTER, District Judge.

In their trial briefs the parties raised three questions of law which Plaintiff, with this motion, seeks to have resolved before the end of trial. Defendants have no objection to determination of these issues at this time. Although this procedure is unusual, the Court deems it acceptable because the motion raises legal rather than factual issues. Once these legal issues are resolved, the parties will be able to sharpen the focus of the presentation of the remainder of the evidence in this already lengthy trial. The Court has carefully considered the written submissions of the parties on these points and will determine them *in limine* in the expectation that it will facilitate completion of trial and final resolution of this matter.

### I. *Scienter Requirement*

The first issue pointed to by Plaintiff is whether the *scienter* requirement for cases brought under section 10(b) of the Securities Exchange Act of 1934 is satisfied by a showing that a defendant acted recklessly. The Supreme Court established the *scienter* requirement in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976), but specifically left open the issue of recklessness. *Id.* at n. 12. Since *Hochfelder*, most courts addressing the issue have determined that a showing of recklessness will establish *scienter*. *See, e.g., IIT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 923 (2d Cir.1980); *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1023–24 (6th Cir.1979); *First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1314 (5th Cir.1977), *cert. denied* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978); *Kaufman v. Magid*, 539 F.Supp. 1088 (D.Mass. 1982). The First Circuit Court of Appeals has not directly addressed the problem, but twice it has assumed without deciding that recklessness is sufficient to show *scienter*. *Hoffman v. Estabrook & Co., Inc.*, 587

694

F.2d 509, 516 (1st Cir.1978); *Cook v. Avien, Inc.,* 573 F.2d 685, 692 (1st Cir.1978). Moreover, in deciding that recklessness was sufficient to establish liability in a commodities futures case, the Court based its argument on the fact that most circuit courts have accepted a recklessness standard in section 10(b) cases. *First Commodity Corp. v. Commodity Futures, Etc.,* 676 F.2d 1, 6–7 (1st Cir.1982). Given the highly persuasive authority from other circuits and the strong indication that the Court of Appeals will follow suit when the proper situation arises, this Court concludes that proof of recklessness satisfies the *scienter* requirement of section 10(b).

The contours of the standard of recklessness have been enunciated by the First Circuit Court of Appeals in *Cook, Hoffman* and, most recently, in *First Commodity Corp.* There the Court adopted the Seventh Circuit's formulation of recklessness as a lesser form of intent rather than a greater form of ordinary negligence. *First Commodity Corp.,* 676 F.2d at 6. The Court went on, as it had previously in *Hoffman,* to quote Dean Prosser's definition of reckless conduct:

> [T]o act "recklessly" is to act "in disregard of a risk so obvious" that the actor "must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."

*Id.* at 7 (*quoting* W. Prosser, The Law of Torts 185 (4th ed. 1971). In evaluating evidence presented to establish Defendant's *scienter,* the Court will apply this standard.

## II. *Due Diligence*

■ In addition to *scienter,* the traditional elements of a section 10b–5 action are material omissions and/or misrepresentations, reliance and due care by the plaintiff. *Holmes v. Bateson,* 583 F.2d 542, 551 (1st Cir.1978). Plaintiff seeks a ruling *in limine* that the due care requirement is satisfied by a showing that Plaintiff did not act recklessly.

■ The due care requirement has been reassessed by many appellate courts in the wake of the Supreme Court's establishment of the *scienter* requirement in *Hochfelder.* In general, these courts have determined that "scrutiny of plaintiff's conduct under a traditional due diligence-negligence standard is no longer appropriate, particularly in light of the general absence of such a requirement in cases of common law fraud." *Mallis v. Bankers Trust Co.,* 615 F.2d 68 (2d Cir.1980); *Siebel v. Scott,* 725 F.2d 995, 1000 (5th Cir.1984); *Zobrist v. Coal-X, Inc.,* 708 F.2d 1511 (10th Cir.1983); *Dupuy v. Dupuy,* 551 F.2d 1005, 1018 (5th Cir.1977), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197; *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1048 (7th Cir.1977); *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155; *cf., Straub v. Vaisman & Co.,* 540 F.2d 591, 596–98 (3d Cir.1976) (making lack of due care an affirmative defense); *see also,* L. Loss, *Fundamentals of Securities Regulation,* 1127 (1983). In a thoughtful, oft-cited opinion, the Court of Appeals for the Fifth Circuit found analogous the tort law policy of deterring intentional misconduct and the policy underlying the securities acts of protecting investors from fraud. *Dupuy,* 551 F.2d at 1018. Just as tort law has evolved in many instances to allocate loss to the more culpable actor by modification or abandonment of the concept of contributory negligence, the Court reasoned that equity prompts a similar allocation under the securities acts. *Id.* Moreover, any mechanism to limit the potentially huge liability imposed by section 10(b) is far less necessary than it was before imposition of the *scienter* requirement in *Hochfelder. Id.* at 1019. The court in *Dupuy* held, therefore, that a plaintiff's rule 10b–5 claim is not barred by ordinary negligence; no recovery is available, however, if the plaintiff is found to have acted recklessly.

■ The Court is persuaded by the rationale of *Dupuy* and will find due diligence on the part of Plaintiff if he did not act recklessly.[1] The decision is bolstered

1. The Court notes that Defendants as well as     Plaintiff cite *Dupuy* and that there seems to be

by the Court of Appeals' indication in *Holmes v. Bateson* that it too will abandon the due diligence-negligence standard for plaintiffs' conduct in cases of affirmative misrepresentation:

> We do not now have the occasion to rule on the standard of care required in a 10b–5 scienter case based solely on affirmative misrepresentations, but note that Dupuy's holding eliminating ordinary negligence as a defense seems to be a reasonable extension of our own holding in *Rogen v. Illickon, Corp., supra,* 361 F.2d [260] at 267–268, in the light of the new standards now required by *Ernst & Ernst.*

*Holmes,* 583 F.2d at 559, n. 21.

### III. *Respondeat Superior*

■ The final issue which Plaintiff seeks to have resolved *in limine* is whether the corporate defendants, Merrill Lynch and Tucker Anthony, may be held vicariously liable for their employees' violations of the federal securities laws under a theory of *respondeat superior.* Section 15 of the Securities Act of 1933 and section 20 of the Securities Exchange Act of 1934 provide liability for persons controlling other persons who violate the Acts. The liability imposed is subject to a good faith defense. The circuits are split on whether the controlling person provisions of the Acts are exclusive or "whether principals are liable for the acts of their agents on common law agency concepts of *respondeat superior* without the statutory defenses." L. Loss, *Fundamentals of Securities Regulation.* The majority view is that employers may be subjected to both the common law and statutory liabilities. *Henricksen v. Henricksen,* 640 F.2d 880 (7th Cir.1981); *Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111 (5th Cir.1980); *Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 712–17 (2d Cir.1980), *cert. denied* sub nom., *Wooden, Walker & Co. v. Marbury Management, Inc.,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469; *Holloway v. S. Howerdd,* 536 F.2d 690 (6th Cir.1976); *Kravitz*

v. *Pressman, Frollich & Frost, Inc.,* 447 F.Supp. 203 (D.Mass.1978).

In *Paul F. Newton & Co.* the Court of Appeals for the Fifth Circuit examined in detail the viability of the doctrine of *respondeat superior* after enactment of the "controlling person" provisions of the securities laws. The Court found the legislative histories of sections 15 and 20(a) inconclusive. Those histories established that Congress had acted specifically to prevent persons from escaping liability under common law principles by using corporate shells to commit violations of the Acts. "The legislative history of § 15 does not indicate whether Congress by enacting § 15 intended to supplant common law principles for determining secondary liability or simply to expand the group of persons secondarily liable. . . ." *Paul F. Newton Co.,* 630 F.2d at 1115. Despite the inconclusive legislative history, the Court noted that, as remedial legislation, the federal securities statutes should be construed broadly. Congress had expressed no intent to restrict secondary liability. It had, however, enacted section 28 of the Securities Exchange Act, 15 U.S.C. § 78bb(a), providing that rights and remedies created by the Securities Exchange Act do not displace, but are in addition to, all other rights and remedies existing at law or equity. Thus, a broad construction compels a finding of concurrent liability under the Acts and common law agency principles. *Paul F. Newton & Co.,* 630 F.2d at 1118; *Marbury Management Inc. v. Kohn,* 629 F.2d at 716.

The Fifth Circuit Court went on to find support for its statutory analysis in the "pervasive application of agency principles in nearly all other areas of the law." *Paul F. Newton & Co.,* 630 F.2d at 1118. Only through application of these principles can courts give full force to Congress' intent to protect investors from fraudulent practices. *Id.* at 1118–19. If only the statutory provisions were to apply, brokerage firms whose brokers have committed fraud would be able to escape liability by show-

---

less dispute over the standard to be applied than

over the manner of its actual application.

ing ignorance of the fraud even though the firm's reputation and prestige may have been an important factor enabling the registered representative to commit the fraud. *Id.* at 1119. Because of the traditional principles circumscribing liability under agency law, the Court did not find it unfair to subject corporations or employers to secondary liability both under the statute and the common law. *Id.*

This Court is aware that the Courts of Appeal for the Third and Ninth Circuits have not generally recognized *respondeat superior* as a basis for establishing secondary liability under rule 10b–5, on the ground that imposition of such liability would circumvent the good faith defense set forth in the controlling person provisions of the securities statutes, *see Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880, 884 (3d Cir.1975); *cert. denied*, 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976); *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.1975). The Third Circuit Court of Appeals, however, has applied the doctrine in instances such as the one here where the employer is a firm upon whom is placed a duty to exercise a high standard of supervision because of the expectation that investment decisions will be made in part on the basis of the firm's reputation. *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 182 (3d Cir.1981). That court does not find inconsistent the application of the doctrine in the cases previously cited for broader acceptance of the principle, because in those cases the employer was a brokerage firm. *Id.*

The First Circuit Court of Appeals has not directly addressed the issue raised here of the secondary liability of brokerage firms under a theory of *respondeat superior* for the activities of their registered representatives. In *Holmes v. Bateson*, 583 F.2d at 560, the court distinguished *Rochez* and found corporate responsibility beyond that imposed by the statute in a situation in which the alleged malfeasors were officers and directors of the corporation.

This Court finds persuasive the reasoning of the Fifth Circuit Court of Appeals

that both statutory and policy grounds favor construction of the controlling persons provisions of the Securities Acts to allow additional secondary liability to be premised on the common law theory of *respondeat superior.* Therefore, if primary liability is established and the conditions of the doctrine of *respondeat superior* are met, Plaintiff may recover from Merrill Lynch and Tucker Anthony on that theory.

Accordingly, the Court will adjudicate the liability of the Defendants, or any of them, by applying the principles of law articulated in the foregoing opinion.

So ORDERED.