**UNDERWRITERS AT LLOYD'S UNDER POLICY NO. LHO 10497 et al.,**
Plaintiffs,

v.

**PEERLESS STORAGE COMPANY, and Peerless Transportation Company,**
Defendants.

Civ. No. C-3-74-107.

United States District Court,
S. D. Ohio, W. D.

Nov. 26, 1975.

Robert J. Amsdell and Richard A. Getty, of Calfee, Halter & Griswold, Cleveland, Ohio, Jon M. Sebaly, of Smith & Schnacke, Dayton, Ohio, for plaintiffs.

Robert P. Bartlett, Jr., of Estabrook, Finn & McKee, Dayton, Ohio, for defendants.

CARL B. RUBIN, District Judge.

This matter is before the Court following trial, presentation of evidence and testimony, trial briefs, and post-trial memoranda. Plaintiff as subrogee of the Norton-Simon Company and McCall Publishing Company and plaintiffs Norton-Simon, Inc. and McCall Publishing Company claim damages against defendant for breach of a bailment contract. In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its findings of fact and conclusions of law.

I

## FINDINGS OF FACT

1. In 1968 defendant, Peerless Storage Company, purchased a warehouse located at 2221 Home Avenue, Dayton, Ohio. The premises had been previously owned and used by the United States Corrugated Box Company for manufacturing of various kinds of boxes.

2. After purchase, defendant, Peerless Storage Company, operated such building as a warehouse. The building contained approximately 53,000 square feet without interior fire walls and without a sprinkler system.

3. Shortly after acquisition by defendant an agreement was entered into between such defendant and the McCall Publishing Company whereby rolled paper stock, approximately 6 feet in height was stored by defendant for such McCall Publishing Company. An official of the McCall Publishing Company inspected the premises and determined their suitability for the storage of the paper stock. The parties thereupon entered into a verbal month-to-month storage agreement. The storage agreement continued until February 27, 1971.

4. On two occasions, one in 1969, and one in 1970, the premises were inspected by the Marsh-Mclenden Company, insurance investigators for plaintiff. On each occasion a report of the deficiencies of such warehouse were submitted to plaintiffs and to defendant. While some minor corrections were made as requested, major improvements such as the installation of a sprinkler system was not made although discussed with plaintiff McCall Publishing Company. Defendant Peerless Storage Company declined to make such improvements for a month-to-month bailor and plaintiff McCall Publishing Company was unwilling to commit itself to any longer term bailment agreement. At all times subsequent to the inspections the McCall Publishing Company was aware of the recommendations of Marsh-Mclendon and

the failure of defendant Peerless Storage Company to correct the deficiencies noted.

5. Merchandise in defendant's warehouse was moved by the use of four "tow motors", gasoline powered vehicles which were operated within the warehouse. Fuel for such vehicles was originally placed in five-gallon "GI" cans, a metal five-gallon liquid container, originally designed and used by the United States Army in World War II. At a date prior to February 27, 1971, fuel for such tow motors was stored in safety cans approved by Underwriter's Laboratories.

6. On February 27, 1971, a fire destroyed the premises at 2221 Home Avenue, including paper stock stored therein by plaintiff Norton-Simon, Inc., and McCall Publishing Company. No evidence of the cause of such fire was presented by either side. The value of the paper stock destroyed by the fire amounted to $850,096.00. Plaintiff, Underwriters at Lloyd's, paid to Norton-Simon and McCall Publishing Company the sum of $750,096.00 and became subrogated thereby to all rights of Norton-Simon and McCall Publishing Company for recovery of such sum. In addition, Norton-Simon and McCall Publishing Company suffered an uninsured loss in the sum of $100,000.

7. This action was commenced June 25, 1974, nearly three and a half years after the cause of action arose. Ohio Revised Code § 2305.10, entitled: "Bodily injury or injury to personal property" provides as follows:

An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose.

## II.

## OPINION

■ In an action premised on a bailment contract, a prima facie case of liability is established once the bailor/plaintiff proves three elements,

1) a contract of bailment, 2) the bailment of an article with the bailee/defendant, 3) that the article was not returned, or was returned in a damaged condition. *David v. Lose,* 7 Ohio St.2d 97, 36 Ohio Op.2d 81, 218 N. E.2d 422 (1966); 7 O.Jur.2d Rev. *Bailments,* § 30 (1969). Findings of fact 2 and 6 establish that all three of these elements are present. The plaintiff has therefore established a prima facie case of liability.

■ Once a prima facie case of liability has been established "the burden of proceeding with the evidence shifts to the bailee to explain his failure to redeliver." *Agricultural Ins. Co. v. Constantine,* 144 Ohio St. 275, 288, 58 N.E.2d 658, 665 (1944). The explanation for the failure to redeliver the bailed goods in this case is that the goods were destroyed in a fire in bailee's warehouse.

■ With the establishment of a prima facie case, and an explanation by the bailee of his failure to redeliver, a dichotomy arises as to which party must meet the burden of proof on the issue of the bailee/defendant's negligence. In a tort action, the plaintiff must affirmatively show defendant's negligence; but in a contract action the defendant must affirmatively show that it exercised ordinary care, i. e., that it was not negligent. This dichotomy was well stated in the following case:

The burden is on defendant to overcome the *prima facie* proof of negligence, which is established by proof of failure to redeliver the goods to the bailor upon his demand. (citations omitted)

The obligation of proof is different —where the bailor founds his cause upon negligence than when it is in *assumpsit,* in which case the burden of proving loss by negligence of the bailee rests upon the plaintiff in the first instance to show that the negligence of defendant caused the loss to plaintiff as part of his case. (citations omitted)

But where the demand by the bailor rests upon the contract of bailment, as it does in the case at bar, proof of failure on the part of the bailee places the burden on him to prove that he was ordinarily prudent. (citations omitted)

*Heckler v. Columbus Transfer Co.*, 17 Ohio N.P.N.S. 294, 25 Ohio Dec. 171, 50 W.L.Bull. 463 (1914)

In cases construing the laws of the states of Tennessee and Kentucky the United States Court of Appeals for the Sixth Circuit has recognized both sides of this dichotomy. In *Hammond v. United States*, 173 F.2d 860 (6th Cir. 1949) it was held that in Tennessee the burden of establishing the bailee's negligence rested on the plaintiff. In *Hardware Dealers Mut. Fire Ins. Co. v. Dixie Warehouse Co.*, 262 F.2d 105 (6th Cir. 1959) apparently applying Kentucky law, it was held that the burden was on the warehouseman to establish his freedom from negligence. See: Annot., *Presumption and Burden of Proof Where Subject of Bailment is Destroyed Or Damaged By Fire*, 44 A.L.R.3d 171, § 18(b).

▅▅ There can be no dispute that this action may not be maintained as a tort action for negligence.[1] It is instead an action premised upon the contract of bailment, and as such the burden is upon the defendant to show its freedom from negligence, or, to show that it exercised ordinary care. That the statute of limitations prohibits the maintenance of a tort action does not prohibit the use of a tort standard of conduct (negligence) in determining the propriety of performance under a contract.

Defendant did not prove by a preponderance of the evidence that it had exercised ordinary care, or that it was free from negligence, in its operation of Warehouse #15. Accordingly, the Court holds that the defendant offered "no

proof of facts from which an inference of due care may be drawn, he does not . . . rebut the presumption of . . . want of due care arising from his failure to redeliver." *Agricultural Ins. Co. v. Constantine, supra.*

▅ The fact that the bailor was aware of certain hazards, and certain lack of preventative measures does not exempt defendant from liability for its own negligence. See *Jersey Ins. Co. v. Syndicate Parking, Inc.*, 50 Ohio L.Abst. 329, 78 N.E.2d 692 (1948, App.) where the Court stated that it "is now apparently well settled that a bailee for hire cannot, by contract, exempt himself from liability for his own negligence or for that of his agents or servants."

▅ A bailee may secure himself against the traditional rule by a contract specifically exempting him from liability in the event of the destruction of the goods by fire. Cases where the bailment contract contained an "owner's risk of loss from fire" clause, *J. C. Penney Co. v. D. D. Jones Transfer and Warehouse Co.*, 408 F.2d 678 (4th Cir. 1969); *Revenue Aero Club Inc. v. Alexandria Airport, Inc.*, 192 Va. 231, 64 S. E.2d 671 (1951), are not applicable here since there is no similar contract with a clause placing the risk of loss from fire on the owner of the goods. Bailor's awareness of the conditions at the warehouse does not exempt the defendant from the necessity of showing its own freedom from negligence.

▅ The defendant has raised the defenses of contributory negligence and assumption of the risk. Such defenses are not available in a contract action such as the present one. It is the defendant's conduct that is under scrutiny and such defendant may not shift the burden onto the plaintiff by characterizing the plaintiffs' conduct as contributorily negligent or as assuming the risk. The plaintiff's conduct is not in issue

[1]. Suit was filed June 25, 1974, three and one half years after the fire of February 27, 1971. O.R.C. 2305.10 requires an action for injury to personal property to be brought within two years. See Findings of Fact 7.

here, except insofar as it relates to the fact of delivering the goods for bailment, or as it relates to the plaintiff entering into a specific agreement to bear the loss from destruction due to fire.

■ While plaintiff has established by a preponderance of the evidence a contract of bailment, the bailment of an article with the bailee and a loss of such bailed article, it cannot recover in this action. Simply stated O.R.C. § 2305.10 and its two year statute of limitation bar recovery. Were such statute inapplicable plaintiff would recover its damages of $750,096.00. Ohio Courts have uniformly held that there is no characteristic of a bailment contract which would permit it to avoid the two year statute of limitations. *Bauman Chevrolet, Inc. v. Faust*, Ohio Com.Pl., 113 N. E.2d 769, 66 Ohio Law Abst. 145 (1953); *Schiffman v. Itts*, Ohio App., 183 N.E.2d 423, 88 Ohio Law Abst. 389 (1961). The two year statute of limitations in O.R.C. § 2305.10 cannot be avoided by couching a complaint in terms of a breach of contract action rather than in tort. If the action seeks to recover for injury to personal property, regardless of the terminology used in the complaint, the two year statute is applicable. *Andrianos v. Traction Company*, 155 Ohio St. 47, 97 N.E.2d 549 (1951); *Sears Roebuck & Company v. Cleveland Trust Company*, 355 F.2d 705 (6th Cir. 1966) (applying Ohio law)

The Court is aware of *Ohio Casualty Insurance Company v. Ford Motor Company*, 502 F.2d 138 (6th Cir. 1974). In that case a divided court held as follows:

Accordingly, we hold that under Ohio law, the six-year statute of limitations applies to an action for indemnification arising where a party secondarily liable has been compelled to pay damages that should have been borne by a party primarily liable, even if the parties are not in fact in privity of contract. 502 F.2d 138, at 141.

Both the majority of the court and the dissent, however, referred to 50 O. Jur.2d, Subrogation § 26.

The majority observed:

Of course, the insurance company, as subrogee, has no greater rights against Ford—no longer time in which to commence an action—than the insured would have had if he instead of the insurance company, had paid the claims and sued appellee for indemnification. 50 O.Jur.2d, Subrogation § 26. 502 F.2d 138 at 139.

Practically the same statement appears in the dissent:

Ohio Casualty's claim for subrogation can rise no higher than its source. 50 Ohio Jur.2d Subrogation, § 26, p. 413. If the subrogor's claim has already been barred, the subrogee is subject to the same limitation. 502 F.2d 138 at 143.

■ When an insurance company pays the claim of its insured, it is subrogated to the rights of its insured, and to those rights only; its rights cannot exceed those of the insured. "Since the insurer's claim by subrogation is derivative from that of the insured, it is subject to the same statute of limitations as though the cause of action was sued upon by the insured. Consequently, the insurer's action is barred if it sues after expiration of the period allowed for the suing of tort claims." 16 Couch, Insurance 2d § 61.230. We distinguish *The Ohio Casualty Company v. Ford Motor Company, supra*, on the basis that it was an action for indemnification. The instant action is not one for indemnification, it is an action premised on a bailment contract, and as such it must come within the two-year limitation of Ohio Rev.Code § 2305.10.

III

CONCLUSIONS OF LAW

A. This Court has jurisdiction in accordance with 28 U.S.C. § 1332.

B. Plaintiff has established by a preponderance of the evidence a right to recover Seven Hundred Thousand and Ninety-six Dollars ($750,096).

C. Such recovery is barred by Ohio Rev.Code § 2305.10 limiting an action for injury to property to two years.

D. A bailment contract does not avoid the two-year limitation of Ohio Rev.Code § 2305.10 by asserting breach of contract as a cause of action where the basis of action is damage to personal property.

E. An insurer is subrogated to the rights of its insured and its claim cannot exceed that of such insured.

F. Judgment should be and is hereby GRANTED in favor of defendant Peerless Storage Company, et al, and against plaintiff Underwriters at Lloyd's under Policy No. LHO 10497 and against intervenor plaintiffs McCall Publishing Company (Norton Simon.)

Let Judgment Issue In Accordance With the Foregoing.