BIO–VITA, LTD. and
Hemo–Innovations,
Ltd., Plaintiffs,

v.

Carl W. RAUSCH, as General Partner of
Biopure Associates Limited Partner-
ship, Biopure Corporation and Biopure
Associates Limited Partnership, Defen-
dants, Plaintiffs-in-Counterclaim,

v.

William P. TRAINOR, Diane M. Trainor,
Bio–Vita, Ltd., and Hemo–Innovations,
Ltd., Defendants-in-Counterclaim.

Civ. A. No. 90–12688–T.

United States District Court,
D. Massachusetts.

March 12, 1991.

**34**

Leila R. Kern, Kern, Sosman, Hagerty, Roach & Carpenter, Boston, Mass., for plaintiffs.

S. Elaine McChesney, Randal A. Farrar, Robert A. Buhlman, Bingham, Dana & Gould, Boston, Mass., for plaintiffs-in-counterclaim.

## MEMORANDUM

TAURO, District Judge.

This action arises out of a series of written agreements entered into on January 29, 1990 (the "January Agreements") between plaintiff Bio–Vita, Ltd. and defendants Biopure Corporation ("Biopure") and Biopure Associates Limited Partnership ("BALP").[1] The underlying purpose of the January Agreements was to finance and promote the research, development, and marketing of Hemopure, a human blood substitute.[2]

On August 24, 1990, Biopure and BALP rescinded the January Agreements, prompting plaintiffs to file a six count complaint alleging breach of contract, anticipatory breach, securities law violations, common law fraud, specific performance, and accounting.

As part of their response to plaintiffs' complaint, defendants asserted a five count counterclaim against defendants-in-counterclaim Bio–Vita, Hemo–Innovations, Ltd. ("Hemo"),[3] William P. Trainor ("Trainor"), and Diane M. Trainor ("Ms. Trainor"), alleging violation of Mass.Gen.L. ch. 93A, § 11, common law fraud, breach of contract, indemnification, and contribution.

Defendants-in-counterclaim moved to dismiss Counts I (ch. 93A), II (common law fraud), and V (contribution) of defendants' counterclaim. Defendants-in-counterclaim also moved to sever and dismiss all counterclaims against Ms. Trainor. Finally, defendants-in-counterclaim moved to strike certain affirmative defenses. This memorandum addresses each motion in turn.

### I

*Motion to Dismiss Counts I, II, and V of Defendants' Counterclaim*

A. *Introduction*

The gravaman of defendants' counterclaims, and indeed defendants' entire defense in this action, is that Trainor, a principal of plaintiff Bio–Vita, together with his daughter Ms. Trainor, fraudulently misrepresented to Biopure facts known to them

1. The January Agreements consist of an Investment Agreement, a License Agreement, and a Purchase and Sale Agreement.

2. Hemopure is a trade name for purified cattle hemoglobin.

3. In its complaint, plaintiff Bio–Vita states that "[o]n or about February 7, 1990, [it] assigned all of its right, title and interest in and to the License Agreement to plaintiff Hemo, to which Biopure consent under the condition that Bio–Vita remain jointly and severally liable for all obligations of Hemo under the License Agreement." Complaint at ¶ 23. In its answer, defendants "deny that Biopure consented in writing to any assignment by Bio–Vita of its interest in the License Agreement...." Answer at ¶ 23.

concerning Trainor's past. Defendants claim that the Trainors' fraudulent misrepresentations induced Biopure and BALP to enter into the January Agreements with Bio–Vita. *Counterclaim* at ¶ 30. Specifically, defendants allege that

> [i]n the course of the negotiations of the Agreements, Trainor and Ms. Trainor represented, on behalf of Trainor and Bio–Vita, that Trainor was an individual of high repute, able to use his personal contacts to conduct an effective and creditable testing program in Central and South America, thereby advancing the goals of Biopure to obtain FDA approval for the testing and future use of Hemopure in the United States.

Counterclaim at ¶ 28. Defendants contend that in light of Trainor's prior criminal record, together with more recent allegations against him of fraud and falsification of documents, the Trainors "knowingly and fraudulently misrepresented Trainor's character, integrity, reputation and background to Biopure...." Counterclaim at ¶ 30.[4]

### B. *Count I—Mass.Gen.L. ch. 93A, § 11*

In Count I of their Counterclaim, defendants seek a declaration confirming the propriety of their August 24, 1990 rescission of the January Agreements. Defendants contend that plaintiffs made affirmative misrepresentations about the ability of Trainor to act in defendant Biopure's best interest, and omitted to disclose material facts about Trainor which would have caused defendants Biopure and BALP not to enter the January Agreements. Counterclaim at ¶ 46. Defendants argue that plaintiffs' affirmative misrepresentations and omissions constitute unfair and deceptive practices as defined in Mass. Gen.L. ch. 93A, § 11, and that they are entitled to relief, including equitable relief, under the statute. *Id.*

> Section 11 provides in pertinent part that [a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two ... may bring an action ... whether by way of original complaint, counterclaim, cross claim or third party action for damages and such equitable relief ... as the court deems to be necessary and proper.

Mass.Gen.L. ch. 93A, § 11.

Plaintiffs[5] raise three arguments in support of their motion to dismiss Count I of defendants' Counterclaim. First, plaintiffs contend that § 11 does not apply to a purely private dispute. Second, plaintiffs argue that the facts and allegations in support of defendants' claim for relief under ch. 93A do not constitute an "unfair or deceptive practice." Third, plaintiffs assert that defendants fail to allege that Biopure suffered "any loss of money or property," a requirement for relief under § 11.

### 1. *Conduct of any trade or commerce*

Plaintiffs contend that "transactions or disputes that are private in nature simply do not fall within the purview of M.G.L. c. 93A." Memorandum at 22. Plaintiff's contention fails for two reasons. First, plaintiffs confuse defendants' ch. 93A counterclaim with their breach of contract and common law fraud counterclaims. *See* Memorandum at 22. Although the latter counterclaims may involve "an alleged breach of fiduciary duty owed by one coventurer to another," *id.*, that does not

---

**4.** Trainor's prior criminal convictions include a conviction in 1976 for knowingly causing false statements to be made in applications for loans and related security agreements to the First National Bank of Boston, a conviction in 1978 for using a false writing and document within the jurisdiction of the United States Probation Office for the District of Massachusetts, and a conviction in 1980 for the sale or receipt of stolen motor vehicles. In addition, at the time the parties negotiated and entered into the January Agreements, the Connecticut Resources Recovery Authority ("CRRA") brought suit against Trainor and others for fraud, conversion, and unfair trade practices. The CRRA suit settled on March 26, 1990.

**5.** "Plaintiffs" here refers to defendants-in-counterclaim, including Trainor, Ms. Trainor, Bio–Vita, and Hemo.

render defendants' ch. 93A counterclaim "private in nature and therefore not actionable under Section 11." *Id.* Second, the affirmative misrepresentations alleged in defendants' Counterclaim occurred in the "conduct of ... trade or commerce" within the meaning of § 11. Defendants allege that, in the course of negotiating the January Agreements, plaintiffs "knowingly and fraudulently misrepresented Trainor's character, integrity, reputation and background to Biopure." Counterclaim at ¶ 30. Such negotiations constitute "arms-length transactions" within the purview of Mass. Gen.L. ch. 93A, § 11. *See Newton v. Moffie,* 13 Mass.App.Ct. 462, 434 N.E.2d 656, 659 (1982) (Section 11 applies to dealings between legally separate "persons" engaged in arms-length transactions).

### 2. *Unfair or deceptive practice*

Plaintiffs also contend that the alleged misrepresentations at issue in this case do not constitute an "unfair or deceptive practice" within the meaning of Mass.Gen.L. ch. 93A, § 11. Specifically, plaintiffs argue that "the facts and allegations in support of Biopure's claim for relief under Chapter 93A could not reasonably establish, even if proven, a 'level of rascality' violative of Chapter 93A." Memorandum at 24. Although plaintiffs refer to the applicable standard of liability under the statute, *see Levings v. Forbes & Wallace, Inc.,* 8 Mass. App.Ct. 498, 396 N.E.2d 149, 153 (1979) ("The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."), they are incorrect in asserting that defendants' Counterclaim fails to meet that standard. The First Circuit has expressly recognized that "[t]here is a close relationship between a common law action for fraud or deceit and an action for unfair or deceptive prac-

tices under Chapter 93A." *Nickerson v. Matco Tools Corp.,* 813 F.2d 529, 531 (1st Cir.1987). The court concluded that "common law deceit is normally 'rascality' enough" to constitute a violation of ch. 93A. *Id.; see also Sheehy v. Lipton Industries, Inc.,* 24 Mass.App.Ct. 188, 507 N.E.2d 781, 785, *review denied,* 400 Mass. 1103, 509 N.E.2d 1202 (1987) ("If the plaintiff is able to establish that the defendants are liable for deceit or misrepresentation ..., he may be entitled to some recovery under c. 93A."). Here, defendants' pleadings satisfy this threshold requirement. *See Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989) (on motion to dismiss for failure to state a claim, court "must accept all well-pled factual averments as true").

### 3. *Loss of money or property*

■ Finally, plaintiffs contend that this court should dismiss Count I of defendants' Counterclaim on the grounds that defendants fail to allege Biopure suffered "any loss of money or property." Defendants' Counterclaim, however, satisfies this statutory requirement. For example, in ¶ 36 of the Counterclaim, defendants contend that the facts of Trainor's prior criminal convictions "could be expected to undermine the confidence of Biopure's regulators [i.e., the FDA], as well as that of its existing investors and prospective business partners." Although plaintiffs contend that "these consequences remain purely hypothetical," Memorandum at 25, if proven they would constitute a "loss of money or property." [6] In addition, the licensing rights Biopure granted Bio–Vita pursuant to the Licensing Agreement are property. As a result, if plaintiffs acquired such rights by deceit, then defendants suffered a loss of property. Finally, plaintiffs' argument that no causal relationship exists between the al-

---

**6.** This court notes that the FDA recently approved the first American tests in humans of Hemopure. *See* Altman, *U.S. Approves Test of Blood Substitute From Cattle,* N.Y. Times, Feb. 25, 1991, at B8, col. 1. The FDA's approval does not necessarily undermine defendants' contention that Trainor's prior criminal convictions would have an adverse effect on Biopure's regulators. First, there is no evidence that the FDA

even considered this issue. Indeed, if it did, it may have proceeded on the assumption that defendants' rescission of the January Agreements was valid. Second, on a motion to dismiss for failure to state a claim, this court must draw all reasonable inferences from defendants' Counterclaim. *See Dartmouth Review v. Dartmouth College,* 889 F.2d at 16.

leged unfair acts and the claimed loss ignores defendants' plausible argument that they would not have entered into the January Agreements if they had known of Trainor's prior criminal record.

### C. Count II—Common Law Fraud

■ In Count II of their Counterclaim, defendants allege that plaintiffs' fraudulent misrepresentations constitute common law fraud. Plaintiffs, on the other hand, argue that Count II of defendants' Counterclaim fails to meet the requirements of Fed.R.Civ.P. 9(b). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Here, for the reasons stated below, Count II of defendants' Counterclaim fails to comply with the particularity requirements of Rule 9(b).[7]

The First Circuit strictly applies the particularity requirements of Rule 9(b). *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir.1987). Under the First Circuit test, "Rule 9(b) requires 'specification of the time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent can be inferred.'" *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) (quoting *McGinty v. Volkswagon, Inc.*, 633 F.2d 226, 228 (1st Cir.1980)); *see also Hurley v. FDIC*, 719 F.Supp. 27, 30 (D.Mass.1989) (Tauro, J.).

■ To satisfy Rule 9(b), a pleading must specify the time, place and content of each alleged false representation. *Konstantinakos v. FDIC*, 719 F.Supp. 35, 38 (D.Mass.1989) (Tauro, J.). Here, Count II of defendants' Counterclaim fails to satisfy Rule 9(b) in several important respects. First, defendants fail to specify the time of the alleged misrepresentations. Instead, defendants' Counterclaim contains only two

temporal references, neither of which satisfies Rule 9(b). For example, in ¶ 28 of the Counterclaim, defendants allege that "[i]n the course of the negotiations of the Agreements, Trainor and Ms. Trainor represented … that Trainor was an individual of high repute…."[8]

This court's decision in *Kaufman v. Magid*, 539 F.Supp. 1088 (D.Mass.1982) (Tauro, J.) is directly on point. The complaint in *Kaufman* alleged fraudulent non-disclosure and non-investigation, as well as fraudulent misrepresentation. *Id.* at 1093. This court noted,

> The complaint, significantly, does identify the particular defendants who dealt with the plaintiffs, and the *general time period involved*. But the allegations are general, referring only to continuous assurances given the plaintiffs that their investments were under proper supervision. *The complaint does not specify the times, places or details of the alleged misrepresentations.*

*Id.* (emphasis added).

In *Kaufman*, this court allowed defendants' motion to dismiss the fraudulent misrepresentation claim on the ground "that the allegations of misrepresentation by the defendants are insufficiently detailed to provide the defendants a reasonable opportunity to frame meaningful responses." *Id.* A similar result is warranted here. As in *Kaufman*, defendants' Counterclaim does identify Trainor and Ms. Trainor as the two individuals who made the alleged fraudulent misrepresentations. Defendants' Counterclaim does not, however, specify any times, places or details of the alleged misrepresentations. On the latter point, defendants merely allege that plaintiffs represented that Trainor was an individual of high repute. Counterclaim at ¶ 28. Defendants also fail to identify the specific individuals to whom these alleged

---

**7.** Although defendants' ch. 93A claim also fails to comply with the particularity requirements of Rule 9(b), *see Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 12 (1st Cir.1984) (affirming Judge Mazzone's dismissal of ch. 93A claim for failure to comply with Rule 9(b)), plaintiffs did not raise Rule 9(b) as a ground for dismissing that count.

**8.** Paragraph 17 of the Counterclaim contains another vague temporal reference. That paragraph begins, "From the beginning of the negotiations and continuously thereafter, Trainor represented…."

fraudulent misrepresentations were made. Defendants' conclusory allegations simply fail to comply with the particularity requirements of Rule 9(b). *See Howard v. Cycare Systems, Inc.,* 128 F.R.D. 159, 161 (D.Mass.1989) (Collings, U.S.M.) (in case involving misrepresentations allegedly made before the parties entered into a written contract, court noted "pleadings were defective because of the failure to state the time and place of the alleged misrepresentations").

■ The only remaining issue concerns whether this court should provide defendants with leave to amend their Counterclaim so as to comply with Rule 9(b). The First Circuit addressed this issue in *New England Data Services* and instructed district courts to "note the policy in favor of allowing amendments and trying cases on their merits, and against dismissal which would deny plaintiffs their day in court." 829 F.2d at 292. Here, although the filing of plaintiffs' Motion to Dismiss put defendants on notice that in their view defendants' Counterclaim failed to meet the particularity requirements of Rule 9(b), defendants had a right to await this court's determination of that issue before amending their Counterclaim. In this respect, this case differs from *Hayduk,* in which the First Circuit upheld the district court's dismissal of the counts "since the plaintiffs were notified before amending a second time that the allegations of fraud contained in their first amended complaint failed to meet the particularity requirements of Rule 9(b)." 775 F.2d at 445. As a result, this court will provide defendants with leave to amend Count II of their Counterclaim. *See Enterprise Finance Leasing*

Co. v. Westford Regency Inn, Inc.,* CA No. 89–1043–T, 1990 WL 279512 (D.Mass. Oct. 26, 1990).

### D. Count V—Contribution

■ In Count V of their Counterclaim, defendants claim they are entitled to contribution under Mass.Gen.L. ch. 231B, § 3 from plaintiffs for any judgment against them in the action brought by Peter Fisher and Balfour Holding, Inc. ("Fisher action").[9] Several factors support dismissing Count V of defendants' Counterclaim.[10]

First, "[i]t has ... generally been held that counterclaims for contribution or indemnification cannot be raised as counterclaims since they are not matured...." J. Moore & R. Freer, *Moore's Federal Practice* ¶ 13.32 (2d ed. 1990). The Third Circuit addressed this issue in *Stahl v. Ohio River Co.,* 424 F.2d 52 (3d Cir.1970). In *Stahl,* a third-party defendant asserted a counterclaim for contribution against plaintiffs. The Third Circuit held that "[a] claim for contribution is not a matured claim as contemplated under Rule 13(e) because such claim is contingent upon a verdict and judgment establishing liability as a joint tortfeasor." [11] *Id.; see also Scherza v. Home Indemnity Co.,* 257 F.Supp. 97 (D.R.I. 1966).[12]

The Third Circuit's holding in *Stahl* also comports with a literal reading of the Massachusetts contribution statute. Mass. Gen.L. ch. 231B, § 1(a) provides, "[W]here two or more persons *become* jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them...." (Emphasis added.) Here, no one has become jointly liable. In-

---

**9.** The Fisher action is pending in this court. *See Fisher v. Trainor,* CA No. 90–11775–T.

**10.** Dismissing this count will not in any way prejudice defendants' right to bring a separate action for contribution at some later date if appropriate. *See* M.G.L. c. 231B, § 3.

**11.** Fed.R.Civ.P. 13(e) provides, "A claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."

**12.** Although some district courts have not followed the Third Circuit's holding in *Stahl,* the

rationale for departing from that case here is not as readily apparent. *See, e.g., Index Fund, Inc. v. Hagopian,* 91 F.R.D. 599, 605 (S.D.N.Y. 1981) ("[T]he recent trend has been to permit counterclaims for contribution ... under Rule 13(a), in order to facilitate the litigation of all of the claims arising from the same occurrences *in the same lawsuit.*") (emphasis added). Here, defendants' counterclaim for contribution arises from a separate lawsuit, which, even if later consolidated with this action, still involves a number of distinct issues of liability.

deed, for defendants to have a right of contribution under the Massachusetts statute, a jury would first have to find defendants and plaintiffs jointly liable in the Fisher action.

## II

*Plaintiffs' Motion to Dismiss All Counterclaims Against Diane Trainor* [13]

Plaintiffs separately move to dismiss all counterclaims against Ms. Trainor. This court dismisses Count II (Common Law Fraud) of defendants' Counterclaim for failure to comply with the particularity requirements of Fed.R.Civ.P. 9(b). *See supra* pt. I, § C. This court also dismisses Count III (Breach of Contract) of defendants' Counterclaim as defendants admit that such count "was not intended to apply to Ms. Trainor." Opposition at 2. Finally, this court dismisses Count V (Contribution) of defendants' Counterclaim, as that claim has not yet matured. *See supra* pt. I, § D. An analysis of Counts I and V requires further discussion.

### A. *Count I (ch. 93A)*

■ Two reasons support denying plaintiffs' motion to dismiss Count I of defendants' Counterclaim against Ms. Trainor. First, Mass.Gen.L. ch. 93A, § 11 applies to any "person who engages in the conduct of any trade or commerce." Plaintiffs' suggestion, that "as between Ms. Trainor and Biopure, there was no trade or commerce conducted," Memorandum at 36, simply belies the fact that she allegedly participated in the negotiations that led to the January Agreements. Second, Ms. Trainor's status as an attorney also does not make her immune to a ch. 93A claim. *See, e.g., Jurgens v. Abraham*, 616 F.Supp. 1381, 1387 (D.Mass.1985) (attorney who aided party in absconding with earnest money may be liable under ch. 93A).

### B. *Count IV (Indemnification)*

This court dismisses that portion of Count IV of defendants' Counterclaim that seeks contractual indemnification (under certain provisions in the January Agreements) against Ms. Trainor. Count IV also seeks common law indemnification. As plaintiffs did not raise a single argument in support of dismissing this portion of Count IV, this court will allow defendants to maintain their counterclaim against Ms. Trainor for common law indemnification.[14]

## III

*Plaintiffs' Motion to Strike Certain Affirmative Defenses*

### A. *Introduction*

Plaintiffs filed a motion to strike eight of the thirteen affirmative defenses defendants raised in their Answer. Fed.R.Civ.P. 12(f) provides, "Upon motion by a party ..., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts do not, however, view motions to strike affirmative defenses for legal insufficiency under Rule 12(f) favorably. *Bennett v. Spoor Behrins Campbell & Young, Inc.*, 124 F.R.D. 562, 563 (S.D.N.Y.1989). As the court stated in *Bennett,* "The general policy is that the pleadings should be treated liberally, and that a party should have the opportunity to support his contentions at trial." *Id.* Applying this policy to the instant action, this court denies plaintiffs' motion to strike certain affirmative defenses, with two exceptions discussed below.

### B. *Defendants' Eleventh Separate Defense (Assumption of Risk)*

■ In their Eleventh Separate Defense, defendants allege that "Plaintiffs' action is barred by reason of their assumption of the risk of occurrence of those matters of

---

**13.** Diane Trainor is William P. Trainor's daughter. She participated in the negotiations that led to the January Agreements. *See, e.g.,* Counterclaim at ¶ 12 ("Along with Trainor, Ms. Trainor also participated in negotiations, and, as an attorney, acted on behalf of Trainor, Bio–Vita, and another individual and associate of Trainor's, Peter Fisher.").

**14.** Plaintiffs did not raise against this count the argument they successfully raised against defendants' contribution counterclaim.

which they complain." Answer at ¶ 69. Assumption of risk is not, however, available as a defense in a fraud or contract action. *See Underwriters at Lloyd's v. Peerless Storage Co.*, 404 F.Supp. 492, 495 (S.D.Ohio 1975), *aff'd* 561 F.2d 20 (6th Cir. 1977) (assumption of risk defense not available in contract action).[15]

## C. *Defendants' Thirteenth Separate Defense (Rule 9(b))*

In their Thirteen Separate Defense, defendants contend that "[t]he complaint fails to allege fraud with sufficient particularity pursuant to Fed.R.Civ.P. 9(b)." Answer at ¶ 71. Defendants do not contest plaintiffs' motion to strike this "affirmative defense" in their Opposition. Defendants' Thirteenth Separate Defense is, therefore, stricken.

An Order will issue.

## ORDER

For the reasons stated in the attached Memorandum, this court issues the following Order:

1. Plaintiffs' Motion to Dismiss Count I of Defendants' Counterclaim is DENIED.

2. Plaintiffs' Motion to Dismiss Count II of Defendants' Counterclaim is ALLOWED WITH LEAVE TO AMEND.[1]

3. Plaintiffs' Motion to Dismiss Count V of Defendants' Counterclaim is ALLOWED.

4. Plaintiffs' Motion to Dismiss Count I of Defendants' Counterclaim against Diane Trainor is DENIED.

5. Plaintiffs' Motion to Dismiss Counts II, III, and V of Defendants' Counterclaim against Diane Trainor is ALLOWED.

6. Plaintiffs' Motion to Dismiss Count IV of Defendants' Counterclaim against Diane Trainor is ALLOWED insofar as that count seeks contractual indemnification against Ms. Trainor. Insofar as that count seeks common law indemnification against Ms. Trainor, plaintiffs' motion to dismiss is DENIED.

7. Plaintiffs' Motion to Strike Certain Affirmative Defenses is DENIED with two exceptions. Defendants' Eleventh and Thirteenth Separate Defenses are stricken.

---

15. Defendants cite *Peerless Storage* in their Opposition to Plaintiff's Motion to Strike Certain Affirmative Defenses for the proposition that assumption of risk is an appropriate defense in a contract action where defendant's conduct is under scrutiny. That case, however, stands for the exact opposite proposition. *See* 404 F.Supp. at 495 ("It is the defendant's conduct that is under scrutiny and such defendant may not shift the burden onto the plaintiff by characterizing the plaintiff's conduct ... as assuming the risk.").

1. Defendants shall file an amended counterclaim within thirty days of the date of this Order.