Garsh, J.
Third-party defendant David Woronov (“Woronov”) moves for summary judgment, pursuant to Mass.RCiv.P. 56, on all counts of the third-party complaint asserted against him and to strike the affidavit of Alan J. Hoffman (“Hoffman”) submitted in opposition to Woronov’s summary judgment motion. Third-party plaintiffs Hoffman and Susan' Walker Hoffman (collectively, the “Hoffmans”) allege that Woronov tortiously interfered -with contractual relations between Shawmut Bank, N.A. (“Shawmut”) and Global Asset Management Limited (Count VIII), and that Woronov engaged in unfair business practices in violation of G. L. c. 93A (Count IX). For the reasons stated below, defendant’s motions are ALLOWED.
BACKGROUND
Plaintiff Mare A. Comras (“Comras”) filed a complaint against the Hoffmans and others on May 9, 1995, alleging, inter alia, breach of contract, misrepresentation, conversion, interference with contractual relations, and violations of G.L.c. 93A. The claims arose out of a business venture called Global Asset Management Limited (“Global”) which entered into a joint venture with Advantage Funding Group (“Advantage”), in order to market automobile leases which were supposed to be converted to asset-backed negotiable instruments. Allan J. Hoffman was (and still is) President of International Products Supply (“IPS”), a Nevada corporation that was the beneficial owner of shares in Global.
Comras incorporated Global. Under Comras’s direction, the funds and automobile titles generated by the joint venture were placed into a trust to be managed jointly by the joint venture partners (the “Global Trust”).
Shawmut Bank, N.A. (“Shawmut”) acted as Master Servicer and Corporate Trustee of the funds in the Global Trust. It retained the law firm of Gadsby & Hannah in connection with various legal issues surrounding its role as trustee. The parties agreed that all legal fees incurred in creating the trust instrument at Shawmut Bank would be paid for by Global Trust. Woronov, who was employed at Gadsby & Hannah at the time, acted as lead counsel for Shawmut. When Woronov left Gadsby and Hannah, he retained Shawmut as his client.
The Third-party Complaint, which is not verified, alleges, with respect to Woronov, that Comras, without approval, hired Woronov as co-counsel to assist him in creating the Trust and paid him for his services from assets of the Trust, that a major portion of these fees were for work unrelated to the trust, that, in retaliation for challenging the legal bills paid by Comras, “upon information and belief,” Woronov caused Shawmut to withhold funds which should have been paid to Global, and that “upon information and belief,” Woronov conspired with others to steal Global away from its rightful owners and proprietary investors. Woronov denied each of these factual allegations in his answer.
In support of his motion for summary judgment, Woronov filed an affidavit in which he states that at no time was he hired as attorney or advisor for the Hoffmans, Comras, the other defendants, or any potential investors and that he did not invest in Global or ever contemplate doing so and did not enter into an oral or written contract related to Global with any party except Shawmut. Woronov attests further that all his duties and responsibilities were limited to his role as attorney for Shawmut from whom he received payment for his professional services at his customary *173 rate on a monthly basis. Finally, Woronov states that he did not, individually or in combination with Comras, theHoffmans, or others, attempt to purchase, sell, or transfer any shares, certificates or beneficial interests in Global.
In opposition to Woronov’s motion for summary judgment, the Hoffmans submitted an affidavit executed by Hoffman. The affidavit does not affirmatively state that it is based on personal knowledge.
DISCUSSION
Summary judgment is warranted where there are no genuine issues of material fact and where the summary judgment record entitles the moving parly to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue of fact “and that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17(1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 323 (1986)).
I. Motion to Strike
Rule 56(e) provides, in relevant part, that “affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” Mass.R.Civ.P. 56(e). Accordingly, speculation must be stricken as well as hearsay and statements of fact unsupported by evidence of personal knowledge.
Paragraphs seven and nine of Hoffman’s affidavit contain the following explicit statements of opinion and belief:
When the beneficial owners of Global challenged the disbursements for legal fees made from the Global Trust, I believe that Woronov retaliated by advising Shawmut Bank to withhold funds from the Global Trust which were rightfully owed to Global.[4]
I believe that Woronov also ordered a default of Global as a participant in the joint venture . . .
These paragraphs may not provide the basis for opposing entry of summary judgment because “all affidavits or portions thereof made on information and belief, as opposed to personal knowledge, are to be disregarded in considering a motion for summary judgment.” Shapiro Equipment Corp. v. Morris & Son Construction Corp., 369 Mass. 968 (1976) (rescript).
Most of the statements of fact in the Hoffman affidavit must also be disregarded because the affidavit does not demonstrate personal knowledge of the facts being asserted. In paragraph five of his affidavit, for example, Hoffman states that Woronov was hired to assist in the creation of the Global Trust. That statement, of course, is not inconsistent with Woronov being hired by Shawmut. To the extent the Hoffmans wish this court to draw the inference, however, that Woronov was hired by the Trust, there is no basis for personal knowledge on the part of the affiant. Indeed, the third-party complaint alleges that Comras hired Woronov as co-counsel and, thus, to the extent the first sentence of paragraph 5 is based upon which Comras may have told Hoffman, it is inadmissible hearsay. Paragraph 5 goes on state that “Woronov was paid in excess of $60,000.00 directly from the Global Trust for legal services rendered unrelated to the Global Trust.” Hoffman does not, however, set forth how he came to have knowledge about this alleged payment: he does not state that he personally observed a transfer of funds; he does not state who paid Woronov, or on what occasions Woronov was paid; he does not provide true and accurate copies of any business records supporting that contention; he does not state how he knows what legal work Woronov actually did.
Paragraph 6 states that Woronov made certain representations regarding having his own foreign investors willing to invest in the joint venture. Hoffman, does not, however, state that he ever heard Woronov make any such representation. In short, Hoffman fails to “disclose, with any degree of specificity, which person . . . said what to whom, when, and where.” Great Barrington Savings Bank v. Gens, 8 Mass.App.Ct. 942, 943 (1979) (affidavit based upon “evidence that has been made available to me” is not sufficient to withstand motion for summary judgment).
In the same way, Hoffman does not set forth any support for his personal knowledge of such factual assertions as that Woronov himself ordered the forwarding of a default notice to European investors (as opposing to advising his client that a default notice would be proper or carrying out his client’s instructions to forward such a default notice), and he does not indicate how he may have learned what Woronov was told by Global’s legal counsel.[5] See, e.g., Dattoli v. Hale Hospital, 400 Mass. 175, 178 (1987) (attorney’s affidavit not based on personal knowledge failed to establish genuine issues of material fact); Botschafter v. F.D.I.C., 33 Mass.App.Ct. 595, 596 (1992).
The Hoffmans do not provide any explanation for the affidavit’s failure to state that it is made on personal knowledge. Instead, their Opposition to Woronov’s Motion to Strike merely argues that “(o]bviously, as President of the corporation which was the beneficial owner of Global, A. Hoffman has personal knowledge of the events which led to the filing of this litigation and is competent to testify to such *174 events.” Contrary to the Hoffmans’ protestation, it is not at all obvious that an officer of a corporation (“IPS”) that was the beneficial owner of shares in another corporation (“Global”),[6] which, in turn, was a joint venture partner with a third corporation (“Advantage”), would have personal knowledge of the affairs of the trust holding the funds for the joint venture and, even if it were, it would not follow that such a person would have personal knowledge of many of the factual allegations concerning Woronov purportedly set forth in the Hoffman’s affidavit. “(B]are assertions and conclusions regarding a company officer’s understandings, beliefs, and assumptions are not enough to withstand a well-pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Environmental Services (NJ), Inc., 416 Mass. 684, 696 (1993).
Accordingly the opinions and statements of fact not demonstrably based upon personal knowledge in the Hoffman Affidavit will not be considered in connection with the Hoffmans’ opposition to the motion for summary judgment.
II. Interference with Contractual Relations
Hoffman claims that Woronov tortiously interfered with the contractual relationship between Shawmut and Global Trust by causing Shawmut to withhold funds which belonged to Global Trust to be withheld. To recover on a claim of intentional interference with contractual relations, the plaintiff has the burden of establishing that the defendant knowingly induced or caused a third person to break a contractual relationship with the plaintiff and that the defendant’s interference was improper in motive or means. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816, ns.8 & 10 (1990), citing Restatement (Second) of Torts, §767 (setting out seven general factors, including the relations between the parties and the societal interests in protecting the freedom of action of the actor and the contractual interests of the other, to be considered in determining whether interference is improper).
The Hoffmans do not claim in their opposition' to Woronov’s motion for summary judgment that the means Woronov employed in causing Shawmut to breach its contract with Global Trust were improper;[7] rather they claim that Woronov acted for an improper purpose, namely retaliation for the questioning of disbursements of legal fees from Global Trust. Even if there were evidence supporting an assumption that Woronov rendered legal advice to Shawmut that, indeed, caused Shawmut to breach its contract with Global Trust, which there is not, nothing in this record gives rise to an inference that such interference arose from an improper motive.
As Shawmut’s attorney, Woronov would not have acted improperly to the extent he advised Shawmut in order to protect that client’s welfare. Restatement (Second) of Torts, §770 (an actor responsible for the welfare of another does not interfere improperly if the actor does not employ wrongful means and acts to protect the welfare of the third person).[8] By making the rendering of such advice per se proper, the law fosters the vital interests served by the confidential relationship between an attorney and his client. Similarly, as a matter of law, Woronov would not have acted improperly if he gave honest advice in response to a request from Shawmut. Restatement (Second) of Torts §772 (a person does not interfere improperly by giving honest advice within the scope of the request for advice).[9] To be “honest,” Woronov’s advice need not have been correct. “Although incorrect advice as to a client’s contractual obligations might cause that client to become liable to a third party in contract, it does not follow that the attorney would also be liable to that party. To impose such liability on an attorney would have the undesirable effect of creating a duty to third parties which would take precedence over an attorney’s fiduciary duty to his client.” Schott v. Glover, 440 N.E.2d 376, 379 (Ill.App. 1982). Cf. Lomare v. Basbanes, 418 Mass. 274, 276 (1994) (attorney has no duty of care to nonclient even where attorney knows or has reason to know nonclient is relying on services rendered where imposing such a duty of care would create potential for conflicting interests).
Indeed, even if Woronov had personally gained by the advice or had harbored some personal dislike for the plaintiffs, this would not, by itself, render advice to Shawmut improper. King v. Driscoll, 418 Mass. 576, 587 (1994) (“the improper motive or malevolence required is ‘actual malice,’ . . . [t]he motivation of personal gain, including financial gain . . . [and] personal dislike will not warrant an inference of the requisite ill will”). See also Restatement (Second) of Torts, §772, comment c (protection for one giving honest advice applies even if “the actor also profits by the advice or . . . dislikes the third person and takes pleasure in the harm caused to him by the advice”).
Finally, with respect to any action taken by Woronov on the express direction of Shawmut, Woronov is not subject to suit to the extent that he was acting as agent for Shawmut. Hussie v. Bressler, 504 N.Y.S.2d 510, 511 (N.Y. S.Ct.App.Div. 1986).
The record shows that Woronov’s involvement in the transactions at issue occurred solely in his capacity as Shawmut’s attorney. At no time did Woronov purport to act on his own behalf or as attorney for anyone else. His duties and responsibilities were at all times limited to his role as attorney from Shawmut from whom he received payment. The Hoffmans have submitted no admissible evidence from which it reasonably could be inferred that Woronov did not act, at least in part, to protect the welfare of Shawmut, that he did not render honest advice within the scope of a request for advice from Shawmut, or that he otherwise acted outside the scope of his authority. It is true that “[w]here a party’s state of mind or motive is in issue, *175 summary judgment is disfavored.” Pinshaw v. Metropolitan District Comm’n, 402 Mass. 687, 695 (1988). Nevertheless, a plaintiff may not rely on unwarranted conjecture to oppose a summary judgment motion. Here, “there is not enough evidence to warrant a finding that his real motive in these matters was to hurt [Global Trust].” United Truck Leasing Corp. v. Geltman, 406 Mass. at 817 (affirming directed verdict on interference claims). See also Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993) (same).
III. G.L.c. 93A
Plaintiffs fare no better with their unsupported allegations that Woronov violated G.L.c. 93 by acting in an unfair and deceptive manner when he caused money to be withheld from Global which properly belonged to Global and by conspiring with Comras to steal Global away from its true owners and proprietary investors. For a plaintiff to recover under that statute, there must be some evidence from which it can reasonably be inferred that the defendant engaged in conduct that falls within some recognized or established common law or statutory concept of unfairness. Vmark Software, Inc. v. EMC Corp., 37 Mass.App.Ct. 610, 620 (1994). There may be circumstances in which a complaint states a cause of action against an attorney for violation of chapter 93A. See, e.g., Bio-Vita, Ltd. v. Rausch, 759 F.Supp. 33, 39, n.13 (D.Mass. 1991) (attorney who had allegedly made misrepresentations during negotiations leading to the disputed agreement is not immune from a c. 93A claim); Jurgens v. Abraham, 616 F.Supp. 1381, 1386 (D.Mass. 1985) (where plaintiff had alleged that attorney made false and misleading representations, attorney could be liable under c. 93A). Nothing in this record, however, contains evidence that would warrant this action against Woronov proceeding any further. Proof of the elements necessary to establish the plaintiffs’ c. 93A claim is “unlikely to be forthcoming” at trial. Kourouvacilis v. General Motors Corp., 410 Mass. at 714.
ORDER
For the foregoing reasons, it is ORDERED that third-party defendant Woronov’s Motion for Summary Judgment on all counts of the third-party complaint asserted against him is hereby ALLOWED.

Paragraph seven contains inadmissible belief both with respect to Woronov’s motivation and also with respect to what advice was rendered by Woronov to Shawmut.

Failure to follow an order of Global’s counsel is, in any event, not relevant in the absence of any admissible evidence in the record that Woronov was under a duty to follow such an order.

Indeed, Hoffman states in his affidavit that it was not until February of 1996 that the Hoffmans became the sole shareholders of Astica Investments Limited, the true owners of Global, pursuant to a settlement entered into in this action.

See United Truck Leasing Corp., 406 Mass. at 817 {threats, misrepresentation, and defamation are representative of means which are improper).

Section 770 applies to the relationship between an attorney and client. Comment a to Restatement (Second) of Torts §770.

Section 772 applies to the relationship between an attorney and client. Comment c to Restatement (Second) of Torts §772.

Allan J. Hoffman and Susan Walker Hoffman.

John Joyce, Reinhold Mueller and David Woronov.