OPINION
Appellant, House Towing, appeals the judgment of the Hamilton Municipal Court which sustained a magistrate's decision in favor of appellee, John H. Marcum, in the amount of $630, compensating for the loss of certain items of personal property stolen from appellee's car while it was stored at appellant's storage lot.
On August 14, 1996 at approximately 1:30 a.m., appellee was arrested for driving under the influence of alcohol. Pursuant to police procedure, appellee's car was impounded after an inventory of its contents was taken. At appellee's request, the police contacted House Towing to provide the necessary towing and storage services. It appears that appellant is one of several towing companies which has contracted with local authorities to provide towing services in cases which require automobiles to be impounded.
Appellee testified that at the time of his arrest a pool cue valued at $600 and several cassette tapes valued at approximately $8 each were in his car. Appellee also testified that several hours later, at approximately 9:00 a.m. on August 14, 1996, he went to appellant's lot, spoke with two men, and requested that he be allowed to remove some "expensive stuff" from his car. Appellee was told that he could not gain access to the car until it was released by court order. On August 19, 1996, appellee returned to House Towing with a release from the court. Prior to August 19, 1996, an unknown person destroyed a portion of the fence surrounding appellant's lot, gained access to the lot, shattered appellee's windshield, and stole the pool cue and five tapes.
On October 15, 1997, the case was tried to a magistrate who issued a decision in favor of appellee in the amount of $630. Appellant filed an objection to the magistrate's decision. In its entry dated April 29, 1998, the Hamilton Municipal Court overruled appellant's objection and sustained the magistrate's decision. Appellant filed this appeal raising three assignments of error:
First Assignment of Error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT OVERRULED THE OBJECTION TO THE MAGISTRATE'S REPORT.
Second Assignment of Error:
 THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Third Assignment of Error:
 THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING A LACK OF ORDINARY CARE ON THE PART OF THE DEFENDANT.
Under his first assignment of error, appellant argues that the trial court improperly shifted the burden of proof to appellant by imposing an affirmative burden upon appellant to prove that his actions did not fall below the standard of ordinary care. Appellant claims that the trial court applied the wrong legal standard and that, under bailment law, the burden of proof should have remained with appellee throughout the entire trial. Appellant contends that the trial court erred by holding that "the affirmative defense of due care must be proven by the defense."
A bailment exists where one person delivers personal property to another for a specific purpose. Possession alone is transferred, and ownership remains in the bailor. Tomas v. Nationwide Mut. Ins. Co. (1992), 79 Ohio App.3d 624, 629. The instant case involves a bailment for hire for the mutual benefit of both parties. In a bailment for hire, the bailee has two primary duties, (1) to exercise ordinary care in the safekeeping of the property, and (2) to return the property undamaged upon the termination of the bailment. David v. Lose (1966), 7 Ohio St.2d 97,98. Thus, the bailee may have a cause of action that accrues sounding either in negligence for failure to exercise ordinary care, or in contract for failure to redeliver the property unharmed. Id. at 99.
The bailment in the instant case is founded upon contract. First, appellant contracted with the local authorities to tow and store impound cars. Further, in a bailment for hire such as this, an agreement arises whereby the bailor promises to pay a fee in exchange for the bailee's implied promise "to return the bailed item in an undamaged condition." Wooton v. Kash (Apr. 28, 1982), Butler App. No. 81-05-045, unreported, at 3, citing Maloney v. Gen. Tire Sales (1973), 34 Ohio App.2d 177, 180.
Although this claim arises under contract and was analyzed accordingly by the trial court, it appears that appellant wishes to impose the burdens of proof and production required for a claim arising in negligence. The difference between a contract claim and a negligence claim within the bailment context was explained in detail by the Ohio Supreme Court in David. We note that appellant is not alone in confusing these two claims; the Ohio Supreme Court stated in David that even the court of appeals had "failed to draw the distinction between the tort and contract actions available to bailor and * * * confused the two * * *. Although such confusion is not without precedent, it should not be encouraged." David at 100.[1]
To establish a prima facie case in contract, appellee must prove (1) the contract of bailment, (2) delivery of the bailed property to the bailee, and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment. David at paragraph one of the syllabus. Once the prima facie case has been established, the burden of proceeding then shifts to the bailee to explain his failure to redeliver. West Am. Ins. Co. v. Stith (1990), 66 Ohio App.3d 605, citing Agricultural Ins. Co. v. Constantine (1944), 144 Ohio St. 275.
With the establishment of the prima facie case, and an explanation by the bailee for his failure to redeliver, a dichotomy arises as to which party must then bear the burden of proof regarding negligence. Underwriters at Lloyd's v. Peerless Storage Co. (1975), 404 F. Supp. 492, 494. Under a contract claim, in order to escape liability for failure to redeliver the property, the bailee must put forth some affirmative defense. In this case, appellant claims that the care he provided was that of an ordinary, prudent person. When the bailee, like appellant, asserts "non-negligence" as their affirmaive defense, the "burden of proof on the issue of the bailee's conduct remains with the bailee[ ] throughout the trial." David at 99. In contrast, when the bailor brings a claim asserting negligence, "the bailor * * * has the burden of proof on the issue of negligence throughout the trial." Id. Thus, in a tort action, "the plaintiff must affirmatively show defendant's negligence; but in a contract action the defendant must affirmatively show that it exercised ordinary care, i.e., that it was not negligent." Underwriters at Lloyd's at 494. See, also, 8A American Jurisprudence 2d (1997) 687, Bailments, Section 238.
The shifting of the burden in this way may seem somewhat arbitrary at first blush. However, one must consider the different means by which the issue of ordinary care arises under each of the different suits. When a plaintiff asserts negligence, the burden of proving the claim must remain upon the plaintiff throughout the entire trial, for the plaintiff is the party that injected the issue into the trial by claiming that the defendant failed to exercise ordinary care. See Underwriters at Lloyd's at 494. However, where the plaintiff claims that defendant has breached a contractual obligation, the defendant may, under the doctrine of excuse, assert an affirmative defense for his failure to perform the obligation. Id. Within the bailment context, Ohio law recognizes "non-negligence" as such an affirmative defense. David at 99. Appellant will be liable for not redelivering the bailed property, but he "is excused if it has been lost without fault or want of care on his part." David at 100. Thus, under a breach of contract claim, it follows that the defendant who claims "non-negligence" as an excuse should bear the burden of proof on the issue.
In the instant case, it was appellant who injected the issue of ordinary care into the trial by asserting the defense of "nonnegligence." Therefore, the question was not whether the appellee had established negligence, but whether appellant had established "non-negligence" as a legal excuse for his breach of contract. Id. Thus, the trial court was correct in placing the affirmative burden upon appellant to prove "non-negligence." Appellant's first assignment of error is overruled.
Under his second assignment of error, appellant argues that the trial court's decision was against the manifest weight of the evidence. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1977), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; App.R. 12(C). In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1976), 10 Ohio St.2d 230, paragraph one of the syllabus.
In the present case, both appellant and appellee testified. Upon certain points, their testimony conflicted. However, after hearing both parties and viewing the demeanor of the witnesses, the magistrate found that appellee's testimony was credible. After careful review of the record, we find that the trial court as the fact-finder did not lose its way. The decision was not against the manifest weight of the evidence, and appellant's second assignment of error is overruled.
Under his third assignment of error, appellant argues that the trial court abused its discretion in finding a lack of ordinary care on appellant's part. In support of his defense of "non-negligence," appellant contends that his methods to safeguard the storage lot satisfied the requisite standard of care. Appellant and one of appellant's employees testified that after many years in this line of business, to their knowledge, the level of security provided by appellant was the same as that which was provided at similar lots in the community. We note that appellant conducted no investigation into this matter and presented no other evidence to establish security methods utilized by other participants in the industry. Appellant merely stated his general knowledge regarding the practice of other lots.
It is well-established in case law that one who asserts that he was not negligent:
 will not be allowed to show that the act complained of was customary among those engaged in a similar occupation, or those placed under like circumstances or owing similar duties. Such an offer is in effect to show, as an excuse for [appellant]'s negligence, a custom of others to be equally negligent.
Columbus Hocking Coal Iron Co. v. Tucker (1891), 48 Ohio St. 41,61 (citation omitted).
In the case of Jones v. Village of Girard (1924), 111 Ohio St. 258, the city was sued by a woman who had fallen over a crack in the city sidewalk. The city called its safety director, who testified that he had observed sidewalks in the same or worse condition in several neighboring towns. The court stated, however, that the real issue was "whether the village had been negligent in the maintenance of such sidewalk, and that issue could in no wise be affected by the fact that other municipalities had maintained sidewalks in a somewhat similar condition, which might or might not be negligence." Id. at 259. Indeed, "methods employed in any trade, business or profession, however long continued, cannot avail to establish as safe in law that which is dangerous in fact." Witherspoon v. Haft (1952),157 Ohio St. 474, 481, quoting Ault v. Hall (1928), 119 Ohio St. 422. As one Ohio court has stated, we "cannot subscribe to the proposition that because others are more negligent in the care of bailed property, this, necessarily, establishes that due care was exercised by one less negligent." Edwards v. Crestmont Cadillac Corp. (M.C. 1979), 64 Ohio Misc. 1, 13. See, also, Schwer v. New York, Chicago St. Louis RR. Co. (1954), 161 Ohio St. 15.[2]
Our review of the evidence presented at trial reveals that the fence surrounding appellant's lot was in poor repair and easily knocked down, that appellant does not maintain an alarm system for the lot, does not employ a night watchman, and does not provide any sort of video surveillance. Further, there is no one within the immediate vicinity of the lot during nighttime hours, and there is no lighting provided for the lot during the night. Appellant's only security precaution is a Rottweiler dog which lives in the lot as a watchdog. Appellant conceded that the dog does not bark at certain individuals with whom the dog is familiar, including appellant's employees and the owner of the repair garage adjacent to appellant's lot.
Based upon the foregoing evidence, we find that the trial court did not abuse its discretion when it held that appellant failed to meet the standard of ordinary care. This judgment was supported by competent, credible evidence, and will not be reversed by this reviewing court. C. E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279. Appellant's third assignment of error is overruled.
Judgment affirmed.
KOEHLER and POWELL, JJ., concur.
[1] There appears to be conflict in this regard among the Ohio Courts of Appeal tending to blend the burden of proof in a negligence action with the burden of proof in a contract action. See Aetna Casualty Surety Co. v. Woody Sander Ford, Inc. (1969), 21 Ohio App.2d 62, and Maloney, 34 Ohio App.2d at 181.
[2] We note, however, that although industry custom cannot be used to establish a per se standard for determining negligence, it may be considered as one factor. The Ohio Supreme Court has stated as follows:
 Customary conduct or methods do not always furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised.
Witherspoon at paragraph one of the syllabus.